**UNITED STATES of America,**
**Appellee,**

v.

**Lance SAMARIA, aka Lance Samarie, Eric Rondell Glover, Defendants,**

**Frank Elaiho, Defendant–Appellant.**

**No. 00–1244.**

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 2000.

Decided Jan. 23, 2001.

Tiffany M. Erwin, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, Baruch Weiss, Assistant United States Attorney, of counsel), for Appellee.

Colleen P. Cassidy, The Legal Aid Society, Federal Defender Division Appeals Bureau, New York, NY, for Appellant.

Before STRAUB, SOTOMAYOR, Circuit Judges, and SPATT, District Judge.*

SOTOMAYOR, Circuit Judge:

Defendant Frank Elaiho appeals from a judgment following a jury trial convicting him of conspiring to receive or possess stolen goods and conspiring to commit credit card fraud in violation of 18 U.S.C. § 371 (1994), and of committing credit card fraud and aiding and abetting credit card fraud in violation of 18 U.S.C. §§ 2, 1029(a)(2) (1994). We find the evidence insufficient to prove that Elaiho knowingly and intentionally participated in the crimes charged. Accordingly, we reverse Elaiho's conviction on all counts.

## BACKGROUND

This appeal presents the issue of whether the government has offered sufficient evidence to prove that Frank Elaiho was a member of an extensive criminal conspiracy to use stolen credit cards numbers to obtain tens of thousands of dollars worth of mail-order goods. Elaiho claims he was

---

* The Honorable Arthur D. Spatt, of the United States District Court for the Eastern District of New York, sitting by designation.

not involved in such a conspiracy and was simply a gypsy cab driver taking passengers to their requested destinations.[1]

Lance Samaria and Eric Rondell Glover, the other individuals charged in the indictment, pled guilty to participation in the complex criminal credit card scheme. Over a three month period, Samaria and Glover stole credit card numbers, rented public mailboxes from the company Mailboxes, Etc. at locations around Manhattan, and contracted for voice mail accounts. They changed the addresses and phone numbers corresponding to the credit card numbers they had stolen, and, for some of the cards, requested credit-line increases. They then phoned in orders for expensive computer equipment and directed that the merchandise be sent to their rented mailboxes. To convince the mail-order businesses to send their orders to the rented mailboxes, they provided additional identifying information over the phone and faxed copies of false drivers' licenses they had obtained under the cardholders' names. After one mail-order computer company detected evidence of fraud in computer orders sent to Manhattan, it contacted the United States Secret Service, which commenced an investigation.

According to testimony at trial, Secret Service agents first became aware of Elaiho when monitoring the last stage of this scheme, at the moment that Samaria and Glover went to retrieve deliveries made to one of their rented mailboxes. At one Mailboxes, Etc. store on November 13, 1998, Samaria was observed loading a large box into Elaiho's car. An agent testified that she saw Elaiho "kind of looking around where other people [were] walking." After Samaria finished loading the box into the car, the agent said that she saw Elaiho sit in the passenger's seat, with Samaria behind the wheel, and a third person, assumed to be Glover, in the backseat. Before the car drove away, the agent recorded the license plate number which was later traced to Elaiho's rental car.

On November 18, 1998, agents saw the same car pull up to the same Mailboxes, Etc. store with Elaiho driving, Samaria in the passenger's seat, and Glover in the backseat. Samaria went inside the Mailboxes, Etc. store and returned with one large and one small box. Samaria hailed a New York City yellow cab, put the boxes in, and left. Elaiho testified that Glover told him to follow the yellow cab which stopped a few blocks away. There, Samaria unloaded the two boxes from the yellow cab at the curb and crossed the street toward some pay phones. Glover got out and stood by the boxes, and Elaiho remained in his car watching the scene. There, all three were arrested. Inside the two boxes was found computer equipment purchased with a stolen credit card number.

An agent testified at trial that Elaiho, after being arrested and read his *Miranda* rights, stated that he was a cab driver. When asked, Elaiho said that he did not know Samaria or Glover, that he had never been to the Mailboxes, Etc. location prior to that day—and thus could not have been the person whom the agent had observed on November 13th—and that he had not lent his car to anyone else who could have driven to the Mailboxes, Etc. location on a prior occasion.

According to Elaiho's version of events, on November 18, 1998, Glover found him at Elaiho's established pick-up point in the Bronx and hired him to transport Glover

---

1. The term "gypsy cab driver" has been used throughout this case to refer to the practice of using a private vehicle to drive others where they ask for a fee. Undisputed evidence in the record showed that Elaiho had rented a car from National Car Rental during a three-month period and that, on average, the car was driven approximately 100 miles a day.

Elaiho testified that he had earned money as a "gypsy cab driver" since January 1998, had picked up passengers from an established location in front of an apartment building in the Bronx that was not easily accessible to public transportation, and had sometimes lent his car to other gypsy cab drivers.

and Samaria without Elaiho knowing the purpose of the trip. Elaiho also testified at trial that, contrary to his alleged statements upon arrest, someone else had in fact borrowed his car on November 13, 1998.

At trial, the government presented no evidence of any other contact or connection between Elaiho and Samaria or Glover outside of Elaiho's presence at the two pickups, and no evidence that Elaiho was in any way involved in the theft of credit card numbers, ordering of goods, or any other aspect of the fraud scheme.

Samaria, Glover, and Elaiho were charged with conspiracy to receive or possess stolen property and to commit credit card fraud in violation of 18 U.S.C. §§ 371, 1029(b)(2), and credit card fraud and aiding and abetting credit card fraud in violation of 18 U.S.C. §§ 2, 1029(a)(2). After Samaria and Glover pled guilty, Elaiho maintained his innocence, refused the opportunity to plead to a lesser misdemeanor offense, and eventually went to trial. Elaiho was convicted on all counts and sentenced to three and one-half years' probation, with the first two months served in a community confinement center, followed by four months of home detention. The court also imposed a fine of $2,000 and a mandatory $400 assessment.

## DISCUSSION

### A. Standard of Review

A defendant bears a heavy burden in seeking to overturn a conviction on grounds that the evidence was insufficient. *See United States v. Marji,* 158 F.3d 60, 63 (2d Cir.), *cert. denied,* 525 U.S. 1048, 119 S.Ct. 607, 142 L.Ed.2d 547 (1998). When challenged on sufficiency grounds, a conviction will be affirmed if, viewing all the

evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In considering such challenges, when there are conflicts in the testimony, we defer "to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998).

Although a defendant's burden is heavy, Elaiho has met it here by demonstrating that the government failed to offer sufficient evidence at trial from which a jury could reasonably infer that Elaiho had the requisite knowledge and specific intent for the crimes charged. The evidence that is otherwise lacking from the government's proof is not supplied by appeal to evidentiary presumptions that permit, at most, an inference of knowledge but not of specific intent to commit the charged offenses.

### B. The Requirement of Knowledge and Specific Intent

Each of the criminal statutes under which Elaiho was charged requires proof that Elaiho knowingly and intentionally participated in the offenses charged. To support a conviction, the relevant conspiracy, fraud, and aiding and abetting statutes require more than evidence of a general cognizance of criminal activity, suspicious circumstances, or mere association with others engaged in criminal activity.

### 1. Conspiracy

Elaiho was charged with conspiring to receive or possess stolen goods,[2] and

2. The stolen property offense underlying this conspiracy charge assigns criminal liability to anyone who "receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more … which have crossed a State or United States boundary

after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken." 18 U.S.C. § 2315 (1994). Elaiho was only charged with conspiracy to receive or possess stolen goods and not with committing the underlying stolen property offense.

conspiring to commit credit card fraud.[3] *See* 18 U.S.C. §§ 371, 1029(b)(2). "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy; and that an overt act in furtherance of the conspiracy was committed." *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir.1999) (internal quotation marks omitted), *cert. denied*, 529 U.S. 1028, 120 S.Ct. 1441, 146 L.Ed.2d 329 (2000), 529 U.S. 1077, 120 S.Ct. 1696, 146 L.Ed.2d 501 (2000). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir.1999) (internal quotation marks omitted). A defendant's participation in a criminal conspiracy "may be established entirely by circumstantial evidence," *United States v. Desimone*, 119 F.3d 217, 223 (2d Cir.1997), and, "once a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." *United States v. Jackson*, 180 F.3d 55, 74 (2d Cir.1999) (internal quotation marks omitted), *cert. denied*, —— U.S. ——, 120 S.Ct. 2731, 147 L.Ed.2d 993 (2000).

■ Nevertheless, conspiracy to receive or possess stolen goods is a specific intent crime, requiring that the government establish beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute. *See United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir.1984); *see also United States v. Wallace*, 85 F.3d 1063, 1068 (2d Cir.1996) (defining unlawful intent in conspiracies as

the "specific intent to achieve th[e] object [of the conspiracy]"); *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir.1996) (explaining that for criminal conspiracy, the government "must prove that the intended future conduct [the conspirators] agreed upon includes all the elements of the substantive crime") (internal quotation marks and alternations omitted); *United States v. Sanchez Solis*, 882 F.2d 693, 696 (2d Cir.1989) (requiring for a conspiracy conviction that "there must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it") (internal quotation marks omitted).

## 2. Credit Card Fraud

■ Elaiho was also charged with fraud by the use of stolen credit card numbers. Like conspiracy, credit card fraud is a specific intent offense, making it a crime for any individual to "knowingly and with intent to defraud traffic[ ] in or use[ ] one or more unauthorized access devices during any one-year period, and by such conduct obtain[ ] anything of value aggregating $1,000 or more during that period." 18 U.S.C. § 1029(a)(2) (1994).[4]

## 3. Aiding and Abetting

■ Elaiho was also charged with aiding and abetting credit card fraud. The federal aiding and abetting statute provides that anyone who "aids, abets, counsels, commands, induces or procures" the commission of a crime against the United States "is punishable as a principal" with respect to that crime. 18 U.S.C. § 2(a) (1994). Like the conspiracy and credit card fraud counts, aiding and abetting is

---

**3.** The credit card fraud statute is discussed below in section B.2. of this opinion.

**4.** The term "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3) (1994). The statute defines "ac-

cess device" to include "any card, plate, code, account number, ... personal identification number, ... or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1) (1994).

also a specific intent crime. "To convict a defendant on a theory of aiding and abetting, the government must prove that the underlying crime was committed by a person other than the defendant and that the defendant acted ... with the specific purpose of bringing about the underlying crime." *United States v. Best,* 219 F.3d 192, 199 (2d Cir.2000); *see also United States v. Pipola,* 83 F.3d 556, 562 (2d Cir.1996) ("To show specific intent [to aid and abet] the prosecution must prove the defendant knew of the proposed crime ... and had an interest in furthering it."); *United States v. Wiley,* 846 F.2d 150, 154 (2d Cir.1988) (finding that aiding and abetting requires the "specific intent that [the defendant's] act or omission bring about the underlying crime.").

## C. The Requisite Indicia of Elaiho's Knowledge and Specific Intent

▬ The government may prove knowledge and specific intent either by direct evidence, or, as the government attempts to do here, with circumstantial evidence. This Court has repeatedly emphasized, however, that a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy. *See United States v. Jones,* 30 F.3d 276, 282 (2d Cir.1994) ("[A] defendant who is simply present at the scene of a crime or who knew only of the existence and goals of a narcotics conspiracy is not thereby guilty of being a conspirator; the government must prove more than that."); *see also United States v. Salameh,* 152 F.3d 88, 151 (2d Cir.1998) ("Mere association with conspirators and suspicious circumstances ... are insufficient bases for a conspiracy conviction."); *United States v. Scarpa,* 913 F.2d 993, 1005 (2d Cir.1990) ("[A]ssociation with a conspirator, without more, is insufficient to establish the requisite degree of participation in a conspiratorial venture.") (internal quotation marks omitted); *United States v. Young,* 745 F.2d 733, 764 (2d

Cir.1984) (concluding that a rifle hidden in apartment and suspicious wealth and other dealings showed only that the defendant "was aware of the conspiracy and associated with some of its members, ... [not] that she was a knowing participant in it"); *United States v. Johnson,* 513 F.2d 819, 824 (2d Cir.1975) ("Guilt may not be inferred from mere association with a guilty party.").

▬ Circumstantial evidence of knowledge and specific intent sufficient to sustain a conviction must include some indicia of the specific elements of the underlying crime. Such indicia, often accompanied by more general evidence of association, come in a variety of forms. The government may, for example, offer proof of a defendant's knowledge or intent through evidence that the defendant participated in conversations directly related to the substance of the conspiracy. *See United States v. Rosa,* 17 F.3d 1531, 1546 (2d Cir.1994) (statement by defendant that he was interested in purchasing stolen watches and jewelry). A defendant may possess or be mentioned in documents important to the conspiracy. *See United States v. Maldonado-Rivera,* 922 F.2d 934, 979 (2d Cir.1990) (documents discussing aspects of conspiracy found in defendant's home and briefcase); *United States v. Rios,* 856 F.2d 493, 496–97 (2d Cir.1988) (defendant's name appeared in drug transaction log). There may be proof that a defendant exercised authority within the conspiracy itself. *See United States v. Medina,* 32 F.3d 40, 44 (2d Cir.1994) (defendant approved participation of an additional co-conspirator and supplied a gun); *United States v. Tussa,* 816 F.2d 58, 63 (2d Cir.1987) (defendant took part in negotiations leading to the delivery of drugs). A defendant may also be found to have received a share of the profits from the conspiracy. *See United States v. Markiewicz,* 978 F.2d 786, 807 (2d Cir.1992) (defendant accepted portion of distribution of funds from conspiracy). In some cases, a defendant may explicitly confirm the na-

ture of the activity in which the co-conspirators were engaged. *See United States v. Katz,* 601 F.2d 66, 68 (2d Cir.1979) (per curiam) (defendants told by co-conspirator that bonds were stolen).

The government in this case presented no such indicia of Elaiho's knowledge and specific intent to participate in the crimes charged. The government failed, therefore, to meet its burden of offering evidence sufficient to demonstrate, beyond a reasonable doubt, that Elaiho knew that the boxes he helped to transport contained stolen goods and that Elaiho's actions were motivated by an intent to further the receipt or possession of stolen goods. Without adequate proof on the conspiracy to receive or possess stolen goods count, the evidence was also insufficient on the credit card fraud counts.

## D. The Government's Evidence

The government proof consisted of assertions that Elaiho had (1) made false exculpatory statements when arrested; (2) observed the goods themselves; (3) served as a "lookout" during the November 13, 1998 delivery; (4) consciously avoided discovery of the nature of the conspiracy; (5) constructively possessed the stolen goods; (6) rode as a passenger in his car during the November 13, 1998 pickup and was present at the second pickup.

### 1. False Exculpatory Statements

■ According to the agent's testimony, Elaiho, when arrested, stated that he did not know Samaria or Glover, had never been to the particular Mailboxes, Etc. location prior to November 18, 1998, and had not lent his car to anyone else who could have driven it to that location for the earlier pick-up. Viewed in the light most favorable to the government, a jury could reasonably find these statements were false and made by Elaiho in an attempt to exculpate himself from involvement in criminality. These statements do not, however, by themselves supply the evidence of Elaiho's knowledge and specific

intent otherwise lacking from the government's case. Although false statements may strengthen an inference already supplied by specific indicia of knowledge and intent, they do not, by themselves, prove that Elaiho knowingly and intentionally acted in furtherance of a conspiracy to receive or possess stolen property or engaged in, aided and abetted, or conspired to commit credit card fraud. *See United States v. Nusraty,* 867 F.2d 759, 765 (2d Cir.1989) ("Standing alone, a false exculpatory statement by [the defendant] could have proved that [he], once arrested, knew that he was caught up in a situation involving criminal activity. However, his statement [does] not establish, nor was it sufficient for an inference to be drawn, that [he] knew of the conspiracy charged.") (internal citation omitted); *United States v. Tyler,* 758 F.2d 66, 69 (2d Cir.1985) ("In each of the cases in which the jury's disbelief was relied on as a factor supporting affirmance, the evidence apart from the incredibility of the defendant's testimony was sufficient or very close to sufficient."); *United States v. Di Stefano,* 555 F.2d 1094, 1104 (2d Cir.1977) (finding plain error in an instruction that false statements indicating "consciousness of guilt" could be used as "circumstantial evidence of the defendant's guilt" where other evidence against the defendant was weak).

### 2. The Goods as Self Evidently Stolen

■ The government maintains that because Elaiho aided in the pickup of stolen goods, he intended to participate in the crimes charged. Government's Brief at 18–21. This argument rests upon the unproven assumption that Elaiho knew that the goods were stolen. This knowledge cannot be reasonably inferred from the evidence before us. Even taking as true all of the government's claims as to what Elaiho saw and did, the evidence is insufficient to prove that Elaiho knew that the boxes in question contained stolen goods, or further that he knew these goods had been stolen by means of credit card fraud.

The agent testified that on November 13, 1998, Samaria placed one large box in Elaiho's car. The evidence provided no further description of the box, its dimensions, any exterior markings, or whether it was open or sealed. In respect to the November 18, 1998 pickup, the agent testified that she saw Samaria leaving the Mailboxes, Etc. store with two boxes, one large, one small. Significantly, however, there was no evidence that Elaiho, who sat behind the steering wheel of his car the entire time, saw Samaria bringing the boxes out of the store. The agent testified that the trunk of Elaiho's car was open and that she herself "couldn't see exactly" what occurred with the boxes prior to Samaria hailing a yellow cab into which Samaria loaded the two boxes. According to the only testimony on the matter, Elaiho stated that he saw the two boxes only after Elaiho had followed the yellow cab for a few blocks and after Samaria had unloaded them from the cab onto the curb.

What Elaiho saw during these pickups was not necessarily or even reasonably indicative of any criminal activity at all, much less sufficient to support the conclusion that Elaiho knew that the goods were stolen or purchased through credit card fraud. Even if Elaiho suspected that Samaria and Glover were involved in a criminal enterprise of some sort, the exterior appearance of the boxes was equally consistent with any number of different criminal offenses including the receipt and possession of drugs, illegal weapons, coun-terfeit currency, or the receipt of legal goods such as drug paraphernalia that would later be employed in a criminal endeavor.[5]

### 3. Evidence that Elaiho Acted as a Lookout

 The government also claims that Elaiho's knowledge and intent to commit the charged crimes can be inferred from the fact that he acted as a "lookout" for the conspiracy. This claim is based entirely on the agent's testimony that, as she approached the Mailboxes, Etc. location on November 13, 1998, Elaiho caught her attention because he was standing across the street "kind of looking around where other people [were] walking." This was unusual, according to the agent, because it was "a busy street and everyone [was] bustling and moving back and forth, and he was just standing there, kind of facing . . . the location where we were heading." The agent remarked that it appeared "a little suspicious" that "one individual [was] across the street" while someone else loaded a box into a car. This is the sum total of the evidence presented in support of Elaiho's role as a lookout for the criminal conspiracy. There was no evidence that Elaiho was ever armed, or that he said or did anything in his role as "lookout" except "kind of look[ed] around where other people [were] walking." [6]

In conspiracy cases in which defendants acted as lookouts, we have upheld convictions only when other indicia of the ele-

---

**5.** Our holding of *United States v. Boothe,* 994 F.2d 63 (2d Cir.1993), relied upon by the government, is not to contrary. In *Boothe,* we affirmed the conviction of conspiracy to counterfeit United States currency for a defendant who picked up a large volume of high quality paper, loaded it into his van, stopped at a side street and replaced his license plates with another set of plates, drove in a manner to avoid being followed, unloaded the paper into his family's garage, and later, after the paper was again loaded into the van, followed the van in another car in a manner consistent with someone looking to see if they were being followed. *Id.* at 66–69. These actions point to the specific crime of counterfeiting

and are not, as here, equally consistent with a wide variety of criminal and non-criminal activities.

**6.** We note that during the second pickup on November 18, 1998, Elaiho did nothing consistent with the role of a lookout, but rather stayed in his car while others retrieved the goods and placed them in a yellow cab which he was instructed to follow until it parked a few blocks away. At this point, it was Glover, not Elaiho, who got out of the car to stand near the boxes. Therefore, whatever inference may be drawn that Elaiho acted as a lookout is a weak one.

ments of the underlying substantive offense have been in evidence. In *United States v. Pitre*, 960 F.2d 1112 (2d Cir. 1992), for example, this Court upheld the conspiracy conviction of a defendant who had served as a lookout for a illegal drug transaction when other evidence established that the defendant knowingly and intentionally participated in the drug conspiracy. Before the jury was proof that the relevant drug transaction was conducted in a secluded area of the city, at night, in an air of secrecy, involving a considerable sum of cash and a significant number of participants acting nervously, that the defendant discussed with other participants a suspicious car parked nearby and another participant reported back to him concerning the status of the car, that the defendant heard or discussed with other participants where the money for the transaction was located, that the defendant carried a beeper characteristically used to facilitate drug transactions, and that he had been present during at least one prior drug transaction involving the same individuals. *Id.* at 1121–22. In another "lookout" case, we affirmed a conspiracy conviction when the defendant was identified as the "source" of the drugs and the person whom could be contacted in order to stop the drug transaction. *United States v. Torres*, 845 F.2d 1165, 1167–68 (2d Cir.1988); *accord United States v. Wexler*, 838 F.2d 88, 91–92 (3d Cir.1988) (reversing conspiracy and aiding and abetting convictions on sufficiency grounds finding that, despite evidence that the defendant acted as a lookout, "the absence of evidence linking defendant to the specific object of the conspiracy proved fatal" to the government's case when "[t]he evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime"); *see also United States v. Dean*, 59 F.3d 1479, 1487 (5th Cir.1995) ("[E]vidence sufficient to support a reasonable inference that a defendant was knowingly acting as a lookout was insufficient support for the further inference that the defendant knew what he was protecting.").

Even interpreting the evidence in the light most favorable to the government as proving that Elaiho acted as a lookout to the extent claimed, the evidence remains insufficient to demonstrate that Elaiho had the requisite knowledge and specific intent for the crimes charged.

### 4. Other Evidence

■ The government also presented testimony of the agent that Elaiho rode in the passenger seat of his car during the November 13, 1998 pickup and that Elaiho was present at both pickups. These facts may help establish that Elaiho had a closer association with Glover and Samaria than that of a taxi driver, and may, in conjunction with the evidence of Elaiho's false exculpatory statements, observation of the goods, and service as a "lookout," support an inference that Elaiho knew that Glover and Samaria were engaged in some sort of criminal enterprise. Together, this evidence offers us no indicia, however, that Elaiho was aware of the specific crimes charged and that Elaiho had the specific intent to participate in those crimes.

### E. The Limited Inferences Possible From Evidentiary Presumptions

Having failed to provide sufficient proof of Elaiho's specific knowledge and intent regarding the crimes charged through circumstantial evidence, the government seeks to rely on evidentiary presumptions to supply what is lacking. The government argues that either Elaiho's constructive possession of recently stolen goods or his conscious avoidance of the fact that the goods were stolen provides an inference that Elaiho knew that the contents of the boxes were indeed stolen. We reject the argument that Elaiho was in constructive possession of the boxes and find that although conscious avoidance may be a substitute for knowledge, it cannot substitute for the intent necessary to prove the crimes charged.

### 1. Elaiho's Constructive Possession of Recently Stolen Goods

■ The unexplained possession of recently stolen property may permit an inference that the possessor knew that the property was stolen. *See Barnes v. United States*, 412 U.S. 837, 845–46, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). Such possession may be either actual or constructive. "Constructive possession exists when a person has the power and intention to exercise dominion and control over an object." *United States v. Payton*, 159 F.3d 49, 56 (2d Cir.1998). However, "mere presence at the location of contraband does not establish possession." *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988).

In this case, Elaiho never exercised the dominion and control necessary to find that he was in constructive possession of the goods. The evidence, viewed in the light most favorable to the government, showed that during the November 13, 1998 pickup, Samaria placed a box in Elaiho's car, following which Elaiho rode in the same car as a passenger.[7] During the November 18, 1998 pickup, the boxes were not placed in Elaiho's car at all, but rather in the yellow cab in which Samaria rode. Elaiho stayed in his car while Samaria removed the boxes from the yellow cab and set them down on the curb for Glover to stand near. There is no evidence that Elaiho handled any of the boxes or directed where they were to be taken or what was to be done with them. At all times, Elaiho appeared to follow the directions of Samaria and Glover. Elaiho did not, therefore, exhibit the dominion and control over the boxes necessary to find that he constructively possessed them. *See Unit-*

ed States v. Infanti, 474 F.2d 522, 526 (2d Cir.1973) (finding no constructive possession of stolen stock certificates when "[t]here was no evidence that [the defendant] could set the price for the securities, that he had the final say as to their means of transfer or that he was able to assure their delivery."); *see also United States v. Ramirez*, 176 F.3d 1179, 1181 (9th Cir. 1999) (holding that a passenger's "mere knowledge of the presence of contraband, without evidence suggesting a passenger's dominion or control of the contraband, is insufficient to prove possession"); *United States v. Windom*, 19 F.3d 1190, 1200 (7th Cir.1994) (concluding that mere proximity, mere presence, or mere association is insufficient to support a finding of possession).[8]

### 2. Conscious Avoidance

■ The conscious avoidance doctrine provides that a defendant's knowledge of a fact required to prove the defendant's guilt may be found when the jury "is persuaded that the defendant consciously avoided learning that fact while aware of a high probability of its existence." *United States v. Finkelstein*, 229 F.3d 90, 95 (2d Cir.2000). In such circumstances, a conscious avoidance instruction to the jury "permits a finding of knowledge even where there is no evidence that the defendant possessed actual knowledge." *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir.2000).

Even assuming that the conscious avoidance instruction given to the jury in this case was proper, any such inference could do no more than establish Elaiho's knowledge of the criminal endeavor, not his spe-

---

7. After the car pulled away from the curb from the first pickup, we have no evidence as to whether it traveled a great distance or only a few blocks as was the case with the second pickup; we do not know who eventually unloaded the box, where it was kept, whether Elaiho ever touched the box, or whether Elaiho shared in any proceeds from the sale of its contents.

8. The fact that Samaria, Glover, or the conspiracy itself maintained possession of the goods does not aid the government in satisfying its burden that Elaiho possessed the goods. To impute possession by Elaiho in this way would assume what the government has been unable to prove, that Elaiho was a member of the conspiracy.

cific intent to participate in the crimes charged. As this Court has explained:

> [A]pplication of the "conscious avoidance" theory is appropriate where the essential mental element of the crime is "guilty knowledge." It is equally clear that the requisite mental state for conspiracy is intent, not mere knowledge. Thus, the error in the government's logic becomes obvious. If someone can consciously avoid learning of the activities and objects of a conspiracy, how can that person ever intend those events to take place?

*United States v. Mankani,* 738 F.2d 538, 547 n. 1 (2d Cir.1984) (internal citations omitted); *see also United States v. Ferrarini,* 219 F.3d 145, 156 (2d Cir.2000) ("[E]ven if the instructions could be construed to permit the jury to find knowing participation in the conspiracy based on conscious avoidance ... the instructions still do not permit the jury to find intent to participate in the conspiracy based on conscious avoidance."). Because the substantive offenses underlying the conspiracy charges require the specific intent to receive or possess stolen goods or commit credit card fraud, and not simply knowledge that these crimes were afoot, conscious avoidance would not provide the requisite proof needed for conviction. For the same reason, a finding of conscious avoidance will not satisfy the intent requirement for the other counts charged under 18 U.S.C. § 2 (aiding or abetting) or 18 U.S.C. § 1029(a)(2) (credit card fraud). Because we find that the government has not presented evidence sufficient to prove the requisite specific intent, we need not reach the further issue of whether conscious avoidance could have been inferred from this evidence, and, if so, whether the jury was properly instructed.

## F. The Sufficiency of the Evidence

 In the evidence before us, we have no indicia that Elaiho knew that Samaria or Glover were engaged in the receipt or possession of stolen goods or credit card fraud and that Elaiho intended to advance such an enterprise by his actions. Despite an investigation by the Secret Service, no other ties between Elaiho and the conspiracy were established.[9] No evidence linked Elaiho to the activities of the conspiracy in stealing credit card numbers, renting mailboxes, contracting for voice mail service, changing the addresses and phone numbers corresponding to the stolen card numbers, attempting to raise credit lines, ordering goods over the phone, or faxing false drivers' licenses to obtain approval for the orders. As a reviewing court, we do not sit as additional jurors deciding whether "the evidence adduced at trial established defendant's guilt beyond a reasonable doubt, but [instead decide] whether any rational trier of fact could so find." *United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998). For purposes of this inquiry, we must credit every inference that the jury could have drawn in favor of the government. *See United States v. Masotto,* 73 F.3d 1233, 1241 (2d Cir.1996). When, however, the government has failed to provide sufficient evidence that Elaiho knew that one box loaded into the back seat of his car on November 13, 1998, and two boxes placed at the curb near his car on November 18, 1998, contained stolen property, and further that he intentionally sought to conspire with Samaria and Glover in receiving or possessing stolen property, we must reverse. To do otherwise would be to permit mere suspicious circumstances or association with criminals to suffice as proof of conspiracy.

If the evidence is insufficient to show that Elaiho knowingly and intentionally participated in a conspiracy to receive or possess stolen goods, it is also insufficient to support a conviction on the fraud offenses. The government rests its fraud counts against Elaiho on the theory that "[i]t was reasonable for the jury to infer

---

9. In contrast to the extensive telephone traffic the government discovered between Samaria and Glover, none was discovered between Elaiho and either Samaria or Glover.

that Elaiho knew that this merchandise had been purchased with a credit card since the merchandise was clearly purchased using mail-order delivery." Government's Brief at 25. We disagree. Without knowledge that the boxes contained stolen goods, Elaiho could not have intended to engage in credit card fraud, conspire to commit such fraud, or aid and abet such a fraud. The government offered no evidence that Elaiho knew that he had parked near a Mailboxes, Etc. location, or that Elaiho, an immigrant from Nigeria, knew the significance of such a business for those interested in mounting a fraud scheme involving stolen credit card numbers. This topic, essential for the government's case, was never broached during Elaiho's extensive testimony and no other evidence was introduced to suggest that Elaiho possessed such knowledge outside of the agent's testimony that Elaiho stood across the street from a Mailboxes, Etc. store on November 13, 1998.

We have reversed for insufficiency of the evidence upon facts stronger than these. In *United States v. Nusraty,* 867 F.2d 759 (2d Cir.1989), for example, the defendant-taxi driver claimed he arrived at an airport to look for passengers. *Id.* at 761. He had parked and locked his taxi, however, away from other taxis that were waiting to pick-up passengers at the airport. He then entered, exited, and then reentered the airport five minutes later through another door. *Id.* Meanwhile, someone who had previously met the defendant was returning from vacation in India with instructions from the defendant's brother that the defendant would be waiting for the same traveler in the airport to receive a suit that the defendant's brother had asked the traveler to deliver. *Id.* Before the two could meet at the airport, however, customs officials stopped the traveler, searched the pockets of the suit, and found a substantial quantity of heroin. *Id.* at 760–61. The traveler carrying the suit agreed to cooperate with customs officials in a "controlled delivery" to the defendant, who was waiting outside

customs. The defendant greeted him, but then refused to accept the suit, perhaps observing several agents following the two. *Id.* at 761. We concluded that, under these facts:

> Simply waiting for someone at an airport, even under such suspicious circumstances as exist here, is not, by itself, an act from which knowing guilty involvement can reasonably be inferred. Although, as we have noted, a defendant's knowing agreement to join a conspiracy must, more often than not, be proven through circumstantial evidence, ... the circumstantial evidence was simply too thin to warrant an inference of guilty knowledge on the part of [the defendant].

*Id.* at 764.

In another narcotics conspiracy case, we found the evidence insufficient despite proof of both the defendant's association with a known drug trafficker and a pattern of suspicious behavior including counter-surveillance by the defendant. *United States v. Gaviria,* 740 F.2d 174 (2d Cir. 1984). The defendant Lucia Bedoya–Lopez, in the company of the sister-in-law of drug trafficker Miguel "Paco" Sepulveda, had driven her car to a suspected "stash pad" for the Sepulveda drug organization. Bedoya entered and then left he "stash pad" shortly thereafter—looking to either side as she exited the building—and later glanced in the direction of agents parked nearby. *Id.* at 177–79. After Bedoya was arrested, police found fresh cocaine residue in a strainer in the apartment that Bedoya had just left and a plastic bag of cocaine on the floor of the rear passenger's side of Bedoya's car. *Id.* On these facts, we found

> that the evidence adduced at trial failed to demonstrate that Bedoya knew of the existence of the conspiracy charged and knowingly participated in it.... [P]roof of a specific intention by Bedoya to violate the substantive statute—that is, to possess cocaine with intent to distribute

it—is essential to sustain the conspiracy conviction herein.

*Id.* at 184 (internal citations omitted).

The circumstantial evidence upon which the government relies in this case is insufficient to prove Elaiho's knowledge and specific intent to commit the crimes charged. Nor can the evidentiary presumptions drawn from circumstantial evidence prove the requisite criminal intent. Upon viewing the record as a whole in the light most favorable to the government, we conclude that the government failed to present sufficient evidence upon which a rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.

### G. Consciousness of Innocence

On appeal, Elaiho contends that the district court improperly excluded evidence that he had rejected the opportunity to plea bargain with the government. In *United States v. Biaggi,* 909 F.2d 662 (2d Cir.1990), we held that there was no *per se* bar to the admissibility of evidence that a defendant had rejected the government's offer of immunity, and assumed that no such bar would prevent the admission of evidence that a defendant had rejected a plea bargain. *Id.* at 690–91. At the same time, however, we remarked that an offer of immunity would generally carry more evidentiary weight than a rejected plea bargain. *Id.* at 690. Elaiho claims that his rejection of the opportunity to plea to a lesser misdemeanor charge was particularly relevant to and probative of his consciousness of innocence because accepting such a plea would have prevented his deportation as a legal permanent resident from the United States if convicted of the greater charges in the indictment. We need not review the issue of the relevance, under Fed.R.Evid. 401, and balancing, under Fed.R.Evid. 403, of the specific evidence Elaiho sought to introduce in this case because we reverse Elaiho's conviction on other grounds.

## CONCLUSION

The broad reach of the federal conspiracy and aiding and abetting statutes do not extend so far as to permit conviction upon evidence of mere association or suspicion. In this case, the government presented no evidence upon which it could be reasonably inferred that Elaiho, as he climbed into the passenger seat of a car he had rented, knew that a box loaded into the back seat contained stolen goods. Nothing about the events that followed demonstrated that he personally exercised "dominion and control" over this box such that he constructively possessed it. Together with the fact that Elaiho later followed a yellow cab into which others had loaded two more boxes, this evidence is insufficient to prove that he knew that these boxes contained stolen goods and intended to participate in a criminal conspiracy.

Even accepting that an evidentiary presumption could provide some proof of Elaiho's knowledge of these crimes, such a presumption does not supply proof that Elaiho intentionally acted in furtherance of this criminal scheme. Finding, therefore, the evidence insufficient to show that Elaiho conspired to receive or possess stolen goods, we also find that the same evidence does not support the further inference that Elaiho knew that the contents of the boxes at issue had been purchased using stolen credit card numbers, that he intended to defraud the credit cards holders, or that he conspired or aided and abetted others in doing so.

Accordingly, we **reverse** Elaiho's conviction on all counts.