UNITED STATES of America,
Appellee,

v.

Lerone NESMITH, Defendant–
Appellant.

Docket No. 01–1432.

United States Court of Appeals,
Second Circuit.

Feb. 15, 2002.

Jay S. Ovsiovitch; Robert G. Smith, Assistant Federal Defender, on the brief, Rochester, NY, for Appellant.

Douglas E. Gregory, Assistant United States Attorney; Kathleen M. Mehltretter, on the brief, Rochester, NY, for Appellee.

Present POOLER, SOTOMAYOR, Circuit Judges, KAPLAN, District Judge.*

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED.**

Defendant-appellant Lerone Nesmith appeals from the July 24, 2001 judgment of the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*), convicting him after a jury trial of two counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm with an obliterated, removed, or altered serial number, in violation of 18 U.S.C. § 922(k). The district court sentenced Nesmith to 63 months on each of counts one and two and 60 months on count three, all to be served concurrently.

A federal grand jury returned a three count indictment against Nesmith on August 10, 2000. A jury trial took place between May 4 and 8, 2001, and the jury returned a verdict of guilty on all three counts. The evidence at trial showed that on March 3, 2000, Nesmith drove his car from Erie, PA to Rochester, NY. Nesmith was driving around Rochester when a marked police car entered his license plate number into a mobile data terminal as part of a random check and discovered that the plates did not match the vehicle. The officer stopped Nesmith and asked for his license and registration, at which time Nesmith provided his Pennsylvania driver's license and documentation that proved he had recently purchased the vehicle and had properly transferred the plates from his prior vehicle. The officer conducted a further check and discovered that Nesmith had a previous lapse of insurance in New York and that his privilege to drive in New York state had been revoked. The officer then arrested Nesmith. According to the police, in response to a question, Nesmith voluntarily admitted that he possessed a gun in his waistband, which the police later discovered had the serial number removed. The officers then recovered the gun. A supervisor who arrived at the scene after Nesmith's arrest searched Nesmith's car and found a second gun. The supervisor found this gun in the car after two other officers had already searched the car and found nothing.

The defense presented evidence that Nesmith had loaned his car to his cousin, Troy Nesmith, and, that earlier on the day

---

* The Honorable Lewis A. Kaplan, United States District Court Judge for the Southern District of New York, sitting by designation.

of his arrest, Nesmith had retrieved his car, which he found at Troy's residence, with the keys in it and the engine running. It was the defense theory of the case that Troy Nesmith owned both of the guns and placed them in the car, unbeknownst to Lerone Nesmith. Nesmith testified in his own defense and denied that he was carrying a gun in his waistband and denied that the police had found a gun on his person. To corroborate Nesmith's theory, the defense attempted to introduce statements Troy Nesmith made to a defense investigator. According to the defense, Troy Nesmith told a defense investigator that both of the guns were his and that he had placed them in Lerone Nesmith's car, without Lerone's knowledge. Evidently, Troy was present on the first day of trial but was not present on any other day. The defense claimed that it could not locate him and requested permission to introduce Troy's statements through its investigator as a statement against penal interest by an unavailable witness, an exception to the hearsay prohibition. The court denied this application.

■ Nesmith raises three challenges on appeal. First, Nesmith argues that the court erred in prohibiting him from offering into evidence, through a defense investigator, Troy Nesmith's statements under the declaration against interest exception to the hearsay rule for unavailable witnesses, pursuant to Fed.R.Evid. 804(a)(5) and (b)(3). According to Nesmith, Troy Nesmith told a defense investigator that the firearms were his and that he placed them in Lerone Nesmith's car without Lerone's knowledge. Nesmith argues that this testimony supported his theory that he did not have knowledge of the guns and, therefore, that the government could not prove knowing possession. "We review a district court's decision to exclude statements under Rule 804(b)(3) for an abuse of discretion." *See United States v. Doyle,* 130 F.3d 523, 544 (2d Cir.1997). Fed.R.Evid. 804(a)(5) provides that " '[u]navailability as a witness' includes situations in which the declarant—is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." If a witness meets that definition of unavailability, a defendant may offer his or her testimony as an exception to the hearsay rule if it is a statement against interest. A statement against interest is defined as "[a] statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability, . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. 804(b)(3). The rule further provides "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.; see also United States v. Rodriguez,* 706 F.2d 31, 39–40 (2d Cir.1983).

Nesmith argues that the court misinterpreted the rule by considering only whether the defense had subpoenaed the witness, when the rule requires consideration of subpoena *or other reasonable means.* Nesmith also argues that the court denied defense counsel an opportunity to fully address the defense's efforts to locate the witness and to explain the reasonable means used in attempting to locate the witness. We find that the court did not misinterpret Rule 804 or abuse its discretion. Contrary to the defendant's argument, the court did give the defendant a reasonable opportunity to locate the witness. The court remained flexible and open to accommodating the witness's testimony at any time at which the defense could locate the witness. In addition, the

court stated that it would comply with any defense requests for a subpoena of the witness, with which the defense did not follow through. Furthermore, the court did allow the defense to present arguments as to the reasonable means used to procure the witness's attendance. The defendant offered arguments to the court that the witness spoke with a defense investigator and stated the guns were his. The defense also argued that Troy Nesmith spoke with the defense attorney and promised to be present and testify. The court considered all of these arguments and, evaluating the efforts as a whole, the court found them unreasonable. The court did not misinterpret Rule 804 and did not abuse its discretion. This witness was crucial to the defense theory of the case from the beginning, and neither the need to secure the attendance of this witness nor the importance of his testimony was a surprise. While the defense made some efforts to locate the witness, they were not extensive. *Cf. United States v. Flenoid*, 949 F.2d 970, 973 (8th Cir.1991) (holding that defense showed unavailability of witness through numerous attempts at service, "other attempts to reach [the witness] at [her last known] address," and by "exhaust[ing] all other leads concerning her whereabouts," also noting that the defense attorney "warned the district court before trial that [ ] he was experiencing difficulties locating [the witness] and kept the court informed of his efforts"). Furthermore, the defense presented no evidence of efforts to maintain contact with the witness other than during trial—it offered no evidence of efforts during the thirteen months between arrest and trial. Finally, although the court did not base its decision solely on the grounds that the defense did not subpoena the witness, it did mention as a reason that, given the relative ease with which a subpoena could have been sought by the defense and the court's expressed willingness to issue a subpoena, the defense's failure to so subpoena the witness reflected poorly on its overall efforts to attain the witness's attendance, especially considering the lack of other meaningful efforts. *See United States v. Mann*, 590 F.2d 361, 367 (1st Cir.1978) (noting that "other reasonable means" is a "relatively high good faith standard [that] cannot be satisfied by perfunctory efforts").

▇▇▇ Next, Nesmith argues the government did not produce sufficient evidence for the jury to find that he had knowledge of the gun found in the car and that if he did not *knowingly* possess the gun, then we must overturn his conviction on count one. We review challenges to the sufficiency of the evidence *de novo*, *see United States v. Naiman*, 211 F.3d 40, 46 (2d Cir.2000), and consider the evidence in the light most favorable to the government, *see United States v. Samaria*, 239 F.3d 228, 233 (2d Cir.2001). Nesmith's challenge is without merit. The government offered evidence of constructive knowledge sufficient for the jury to find the element. *See United States v. Dhinsa*, 243 F.3d 635, 676 (2d Cir.) (holding that constructive possession satisfies the possession requirement of § 922(g)), *cert. denied*, —— U.S. ——, 122 S.Ct. 219, 151 L.Ed.2d 156 (2001). The government presented evidence that Nesmith owned the car in which the police found the gun and that Nesmith was in extremely close proximity to the gun. Although " 'mere presence at the location of contraband does not establish possession,' " *Samaria*, 239 F.3d at 239 (quoting *United States v. Rios*, 856 F.2d 493, 496 (2d Cir.1988)), the government presented evidence not only of presence, but also proximity and control. Although the government did not present direct evidence that Nesmith placed the gun in the car and knew of its presence, "[p]roof of knowledge may be, and often is,

circumstantial." *United States v. Hastings*, 918 F.2d 369, 373 (2d Cir.1990). On this evidence, a reasonable jury could conclude that Nesmith knowingly possessed the gun in the car. *See Dhinsa*, 243 F.3d at 676 (noting that, in evaluating the element of knowing possession, courts may consider "whether the defendant exercised dominion and control over the premises in which the firearms are located") (internal quotation omitted). Given that the gun was found in the car, which Nesmith owned, the proximity of the gun to Nesmith when he was seated in the driver's seat, and the jury's rejection of Nesmith's version of events, we cannot conclude that "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Marji*, 158 F.3d 60, 63 (2d Cir.1998).

Finally, Nesmith challenges his conviction on count three by arguing that the government did not produce sufficient evidence for the jury to find that he had knowledge that the gun recovered from his waistband had obliterated serial numbers. Nesmith contends that the government only offered evidence to prove possession of a gun, not knowledge that gun's serial number was obliterated. Nesmith is correct that "the government must prove that the defendant knowingly possessed a firearm with an obliterated serial number [in that] [t]he defendant must know that the firearm had an altered serial number." *United States v. Moore*, 54 F.3d 92, 101 (2d Cir.1995) (internal citation omitted). However, the government offered sufficient evidence to prove this element. The testimony of two police officers that the defendant possessed the gun in his waistband, along with the testimony of numerous technicians that the extent of the obliteration was such that an individual could not handle the gun and not notice the obliteration, presented a sufficient basis on which a jury could conclude that Nesmith knew the serial numbers were obliterated.

We find all of Nesmith's remaining arguments to be without merit.