**UNITED STATES of America,**
**Appellee,**

v.

**Luvenia BARTEE, also known as Luvenia Murray, and Ebony Worthy,**
**Defendants–Appellants,**

**Raymond Pastures, Ayanna Thomas, Francisco Rodriguez, and Tracey Livingston, Defendants.**

**Nos. 08–0394–cr (L), 08–0395–cr (Con).**

United States Court of Appeals, Second Circuit.

Dec. 4, 2008.

Martin R. Stolar, New York, NY, for Defendant–Appellant Luvenia Bartee.

Howard L. Jacobs (Meredith S. Heller, on the brief), New York, NY, for Defendant–Appellant Ebony Worthy.

E. Danya Perry, Assistant United States Attorney (United States Attorney Michael J. Garcia, and Assistant United States At-

torneys Daniel W. Levy and Katherine Polk Failla, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Present: JOSÉ A. CABRANES, CHESTER J. STRAUB and ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is hereby **AFFIRMED.**

Defendants-appellants Luvenia Bartee and Ebony Worthy appeal from a January 18, 2008 judgment of the District Court convicting both of them, after a jury trial, of (1) bank fraud, in violation of 18 U.S.C. § 1344; (2) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The District Court sentenced Bartee to a term of 37 months' imprisonment, followed by a term of three years' supervised release, a mandatory special assessment of $300, and restitution totaling $87,203.52. The District Court sentenced Worthy to 12 months and one day's imprisonment, followed by a term of three years' supervised release, a mandatory special assessment of $300, and restitution of $11,000.[1] We assume the parties' familiarity with the underlying facts and procedural history of the case.

On appeal, the defendants-appellants offer three arguments apiece, relating largely to evidentiary issues. Although we have considered all their arguments, we address

---

1. Four other co-defendants—Raymond Pastures, Ayanna Thomas, Francisco Rodriguez, and Tracey Livingston—were indicted with Bartee and Worthy, but pleaded guilty and are not participating in this appeal. Other members of the conspiracy were indicted in separate instruments and also pleaded guilty.

in this Order only those topics that were discussed to a meaningful extent during oral argument.

*Jury Selection*

■ Bartee argues that the District Court abused its discretion by declining to reseat an improperly dismissed juror. "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot,* 534 F.3d 117, 132 (2d Cir.2008) (internal citations and quotation marks omitted).

During trial, Bartee and Worthy challenged the government's use of peremptory challenges under *Batson v. Kentucky,* 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (holding that prosecutors could not use peremptory challenges to dismiss jurors solely on the basis of their race). The District Court declined Bartee's request to recall a prospective juror—whom Bartee contended was improperly dismissed-because the juror had already left. Instead, the Court gave Bartee and Worthy an opportunity to dismiss all the jurors who had been selected and start anew with a fresh jury pool; Worthy declined the offer, but Bartee accepted.

A district court's discretion to fashion remedies for *Batson* violations is broad. *See McCrory v. Henderson,* 82 F.3d 1243, 1247 (2d Cir.1996) (commenting that where "the challenged jurors have already been released," *Batson* errors are "remediable in any one of a number of ways," including the use of "additional jurors[,] ... additional challenges ...; or in cases where those remedies are insufficient, the jury selection might begin anew with a fresh panel"). Under the circumstances of this case, the remedy fashioned by the District Court—giving defendants a choice to either continue or start anew because the juror who was the subject of the *Batson* challenge was no longer available—was "within the range of permissible decisions." *Sims,* 534 F.3d at 132.

*Intended Loss and the Sentencing Guidelines*

Bartee also argues that the District Court erroneously adopted the United States Sentencing Guidelines ("U.S.S.G.") range recommended in the government's Presentence Investigation Report ("PSR"), which determined that the loss caused by Bartee's actions totaled $344,203.52. Bartee posits that the only actual loss attributable to her role in the conspiracy is $87,203.52, the amount of the first check that she deposited at Commerce Bank.

In general, we review the procedural and substantive reasonableness of a sentence for abuse of discretion, and review the factual determinations underlying a sentence for clear error. *See Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007) (instructing appellate courts to "ensure that the district court committed no significant procedural error, such as ... selecting a sentence based on clearly erroneous facts").

The PSR calculated an intended loss totaling $344,203.52 based on the following four items of loss: (1) $87,203.52 (a check deposited in Bartee's account on November 12, 2004), (2) $160,000 (a check deposited in Bartee's account on November 29, 2004), (3) $48,000 (one of two checks deposited in another account by Raymond Pastures, a co-defendant whom Bartee recruited) and (4) $49,000 (another such check). *See* U.S.S.G. 2B1.1 n. 3(A)(ii) (defining "intended loss" as "the pecuniary harm that was intended to result from the offense").

Regarding the first item—the check for $87,203.52—Bartee's argument that she was unaware of the exact amount deposit-

ed in her account is irrelevant; Bartee concedes that she transferred thousands of dollars to her personal account after the check for $87,204.52 cleared.

Regarding the second item—the check for $160,000—Bartee's argument that the $160,000 was not *actual* loss because the bank identified this check as counterfeit before the check cleared is equally unavailing. The PSR calculation was based on *intended* loss, not *actual* loss. *See* U.S.S.G. 2B1.1 n. 3(A) (defining "loss" as "the greater of actual loss or intended loss"). We also find without merit Bartee's argument that, because she "was convicted on a conscious avoidance theory, it was logically impossible to conclude that she intended any particular loss amount...." Although the District Court instructed the jury on conscious avoidance, the government never explicitly argued that Bartee had consciously avoided learning the truth and it introduced a plethora of evidence to demonstrate Bartee's actual knowledge of the $160,000 deposit. In any event, Bartee was convicted of conspiring to commit bank fraud, which requires "knowingly engag[ing] in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy." *United States v. Monaco,* 194 F.3d 381, 386 (2d Cir.1999) (internal quotation marks omitted). Therefore, it was highly unlikely, if not impossible, that the jury would have convicted Bartee of the *substantive* bank fraud charge on the basis of a conscious avoidance theory when it had simultaneously found that she acted with specific intent to further the *conspiracy* to commit bank fraud. Under these circumstances, it was not improper for the District Court to find by a preponderance of the evidence that Bartee intended loss in this amount.

The third and fourth items of loss—the checks deposited by Pastures—did not af-fect the offense level calculation. As the government observes, even if these checks are excluded as items of loss, there would be no difference in the recommended Guidelines range because the two checks deposited in Bartee's account (totaling $247,203.52) fall into the same category of loss for determining an offense level additur. *See* U.S.S.G. § 2B1.1(b)(1)(G) (adding 12 points to the offense level calculation for loss between $200,000 and $400,000).

Accordingly, we conclude that there is no underlying error in the recommended Guidelines range and no error or abuse of discretion in the District Court's sentencing procedures.

*Motion for Judgment of Aquittal*

■ Worthy argues that the District Court improperly denied her motion for a judgment of aquittal under Rule 29 of the Federal Rules of Criminal Procedure—despite commenting that the case against Worthy was "awfully close" (Trial Tr. 827)—because the evidence presented at trial did not demonstrate that she possessed the requisite knowledge or intent. "We review *de novo* a district court's denial of a Rule 29 motion, applying the same standard of sufficiency as the district court." *United States v. Florez,* 447 F.3d 145, 154 (2d Cir.2006); *see also United States v. Santos,* 541 F.3d 63, 70 (2d Cir. 2008) ("[A] conviction must be affirmed if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)).

It is uncontested that Worthy opened a bank account on November 19, 2004 with a $5 deposit. Four days later, she endorsed and deposited a $11,000 check from her co-defendant's company, with which she had no prior dealings. After the $11,000 cleared, Worthy personally withdrew funds

from the account. On December 5, 2004, a check for $21,500 was deposited in Worthy's account, bearing Worthy's signature (at trial, Worthy testified that she "d[id] not recall endorsing that check," but admitted that the endorsed signature was "similar" to hers). (Trial Tr. 895.) In the first week of January 2005, a third check, in the amount of $38,532, was deposited in Worthy's bank account, but was rejected as counterfeit.

In addition, the jury heard testimony from Natasha Singh, a cooperating witness, who recalled conversations among Worthy's co-conspirators—but not including Worthy—concerning Worthy's role in the conspiracy. The jury also heard from a federal agent who testified regarding Worthy's statement to investigators that, *before* the second check was deposited, Worthy either knew or strongly suspected that her co-conspirator, Toybe Bennett, was "into something with checks" that was "not quite legitimate." Finally, although Worthy herself testified that she was unaware of Bennett's money laundering scheme and had only met Bennett after opening her bank account, her credibility was damaged when the government introduced phone records showing numerous, lengthy phone conversations with Bennett prior to opening the bank account in November 2004.[2]

Under these circumstances, there was sufficient evidence for a jury to have inferred beyond a reasonable doubt that (a) Worthy knowingly defrauded a financial institution, *see* 18 U.S.C. § 1344 (elements of bank fraud); (b) Worthy conducted financial transactions involving funds that she knew were the proceeds of an unlawful scheme; *see* 18 U.S.C. § 1956(a)(1) (elements of money laundering); and (c) there was an agreement to accomplish bank fraud and money laundering between Worthy and her co-conspirators, *see* 18 U.S.C. § 1349 (conspiracy to commit bank fraud) and 18 U.S.C. § 1956(h) (conspiracy to commit money laundering).[3]

We have considered all remaining arguments on appeal—including (1) Bartee's claim that the government improperly bolstered Singh's testimony by eliciting from her the "truth-telling" terms of her cooperation agreement prior to cross-examination; (2) Worthy's claim that the District Court erred in admitting Singh's testimony

---

**2.** The government represented to us at oral argument that the District Court appeared to have resolved its doubts about the sufficiency of the evidence against Worthy between the close of the governments' case—when the Court made its statement to that effect—and the close of all the evidence, *i.e.*, after Worthy had testified. But it is not entirely clear that the government's representation is accurate. The District Court appeared to grant Worthy's motion for bail pending appeal at the sentencing hearing at least in part based on its continuing doubts in that regard. *See* Tr. of Sentencing Hearing, Jan. 9, 2009, at 18–20. This does not, however, affect our conclusion that the evidence was indeed sufficient.

**3.** In light of this evidence, defendant's contention that the evidence proved only her "mere presence" or "mere association" is unconvincing. *See United States v. Samaria*, 239

F.3d 228, 235 (2d Cir.2001) (holding that "[c]ircumstantial evidence of knowledge and specific intent sufficient to sustain a conviction must include some indicia of the specific elements of the underlying crime."). In this case, Worthy admitted that she endorsed at least one of the counterfeit checks, demonstrating that she "possess[ed] ... documents important to the conspiracy," *id.*, and a second check contained a signature similar enough to Worthy's signature—as Worthy herself admitted, *see* Trial Tr. 895—for the jury to have concluded that Worthy endorsed a second counterfeit check as well. Worthy's possession and handling of the counterfeit checks—specifically, endorsing and depositing them, and subsequently withdrawing the funds—are sufficient indicia of involvement in the conspiracy beyond "mere presence." *Samaria*, 239 F.3d at 235.

in violation of the Confrontation Clause of the Sixth Amendment and Rule 801(d)(2)(E) of the Federal Rules of Evidence (governing statements made in furtherance of a conspiracy); and (3) Worthy's claim that the District Court erred in allowing the government to present a chart that summarized evidence of the financial transactions underlying the charges of bank fraud, bank fraud conspiracy, and money laundering—and find them to be without merit. We therefore **AFFIRM** the judgment of the District Court.

Fuhao Yang, New York, NY, for Petitioner.