**UNITED STATES of America,
Appellee,**

v.

**Frederick TROPEANO, and Marlon Tropeano, Defendants,**

**David Barroso, Jr., Defendant–
Appellant.**

**Docket No. 00–1708.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 26, 2001.

Decided June 11, 2001.

Colleen P. Cassidy, The Legal Aid Society Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Timothy J. Coleman, Assistant United States Attorney (Mary Jo White, United States Attorney, and Christine H. Chung, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Before WINTER, MCLAUGHLIN, and POOLER, Circuit Judges.

WINTER, Circuit Judge:

David Barroso, Jr., appeals from a conviction after a jury trial before Judge Scheindlin. He was found guilty of conspiring to commit securities and wire fraud, in violation of 18 U.S.C. § 371. On

appeal, Barroso contends that the district court: (i) violated the hearsay rule and the Confrontation Clause when it admitted a co-defendant's follow-up statement sought by the government during the co-defendant's plea allocution; (ii) erroneously charged the jury that it could find the requisite level of criminal knowledge on a conscious avoidance theory; and (iii) admitted certain audiotapes without sufficient authentication.

Although the admission of the follow-up statement from the plea allocution was error, we conclude that it was harmless. We further conclude that giving the conscious avoidance charge was proper and that the audiotapes were admissible. We therefore affirm.

## BACKGROUND

The evidence showed that Barroso and his co-defendants, Marlon and Frederick Tropeano, conspired to defraud four customers of the brokerage firm at which they were employed. The scheme involved the use of forged documents to transfer the customers' accounts to other brokerage firms without the customers' knowledge. *See United States v. Barroso*, 108 F.Supp.2d 338, 339 (S.D.N.Y.2000). Once the transfers were made, defendants liquidated the accounts and took the proceeds. Marlon and Frederick Tropeano pleaded guilty a few days prior to the commencement of the trial. Barroso went to trial, his primary defense being that he was duped by the Tropeano brothers into unknowingly facilitating their crimes. *See id.* at 340. However, there was considerable evidence that Barroso's active participation in the scheme was hardly innocent. He was recorded on audiotape both urgently requesting the liquidation of transferred accounts and stating to a transferee brokerage that he knew the owner of an account and had authority over that account as a result of his friendship with the owner's son. That owner had no sons and

had never met Barroso. Moreover, Barroso endorsed a check drawn on a transferred account. The jury convicted Barroso of conspiracy to commit securities and wire fraud, in violation of 18 U.S.C. § 371.

Following his conviction, Barroso moved for a judgment of acquittal, *see* Fed. R.Crim.P. 29, or alternatively, a new trial, *see* Fed.R.Crim.P. 33. Only one of the various claims in that motion is relevant to this appeal, namely, that the district court improperly admitted a portion of Marlon Tropeano's plea allocution.

The factual background for this claim is as follows. We quote first from the portion of Marlon Tropeano's plea allocution relating to the factual predicates for his plea:

THE COURT: Tell me in your own words what you did.

THE DEFENDANT: I entered into a conspiracy with others between March of 1997 and April of 1998 to commit securities and wire fraud in connection with four accounts at Briarwood Investments by causing unauthorized transactions to be executed in these four accounts of Briarwood Investments and knowing that such transactions would be executed by telephone, fax, into an internal securities clearing house system.

[Colloquy relating to venue omitted]

THE COURT: Does the government have any other questions it wishes me to ask?

MR. COLEMAN: May I have a moment with counsel?

THE COURT: Yes.

(Pause)

MR. COLEMAN: Your Honor, could the Court inquire whether the defendant conspired with one person or more than one person?

THE DEFENDANT: Yes, conspired with one or more people.

THE COURT: Was it one or more than one?

THE DEFENDANT: It was more than one person.

The corresponding portion of Frederick Tropeano's allocution reads as follows:

THE COURT: Let's turn for a moment to 99 Cr. 1025, which I call the Briarwood fraud but want to you [sic] understand that's a conspiracy, and a conspiracy is an agreement. So the charge there is that you agreed to commit securities and wire fraud with other people between March '97 and April '98.

Having been fully apprised of that, can you tell me what you did that makes you say you are guilty of conspiracy to commit securities fraud and wire fraud? What did you do?

THE DEFENDANT: I entered into a conspiracy with others between March of '97 and April of '98 to commit securities and wire fraud in connection with four accounts at Briarwood Investments, by causing unauthorized transactions to be executed in these four accounts in Briarwood Investments and known—

THE COURT: I am sorry. I am not understanding you. Maybe you ought stand up and read slowly, like everybody else. I am not understanding you. Why don't you just start that one all over again?

MR. LONDON: Say it your own words [sic].

THE COURT: No, I thought it was fine to read. Those, I am sure, are very carefully thought out words between you and your client. I have no problem with that. I just want him to read it slowly and carefully and loudly.

THE DEFENDANT: OK. I entered into a conspiracy with others between March of 1997 and April of 1998 to commit securities and wire fraud in connection with four accounts at Briarwood Investments, causing unauthorized

transactions to be executed in these four accounts at Briarwood Investments, and knowing that such transactions would be executed by telephone, fax, into an internal securities clearinghouse system.

That's all, your Honor.

[Colloquy relating to venue omitted]

THE COURT: I see. With whom did you agree? You said you agreed with others. With whom did you agree?

THE DEFENDANT: Marlon Tropeano.

We turn now to the events at Barroso's trial that gave rise to the present appeal. For the purpose of proving the existence of the conspiracy alleged in the indictment, the government initially offered the portions of Marlon's and Frederick's allocutions describing the conspiracy and each one's participation in it, namely, the nearly identical paragraphs quoted above beginning "I entered . . . ." Appellant's response was, first, to request redaction of the words "with others" from both allocutions, and, second, to offer the additional portion of Frederick's statement in which Frederick was asked with whom he conspired and replied, "Marlon Tropeano." The purpose of this latter offer was to bolster Barroso's claim that the sole conspirators were Marlon and Frederick Tropeano.

In response to the offer of Frederick's add-on description of a seemingly limited conspiracy, the government sought the admission of the follow-up statement from Marlon's allocution, in which, after an explicit request by the prosecutor, Marlon stated that he conspired with "more than one person." In support, the government argued that "the defense should [not] have it both ways. They shouldn't be able to argue that there were only two members of the conspiracy, offer only the portion that supports that and not allow the government to offer the portion of the allocution that supports our theory that there were more than one." The district court

agreed with the government and admitted the answers to the follow-up questions posed to both Tropeanos.[1] *See* 108 F.Supp.2d at 345 n. 8. The portion of Marlon's allocution that was read to the jury included the prosecutor's explicit request regarding the number of co-conspirators.

In his post-conviction motion, Barroso argued that Marlon Tropeano's add-on statement that he conspired with "more than one person" was inadmissible hearsay and that its admission violated his Sixth Amendment right to confront witnesses. The district court denied the motion, holding that both of the Tropeanos' allocutions qualified as statements against penal interest under Fed.R.Evid. 804(b)(3) and possessed sufficient guarantees of trustworthiness justifying their exemption from the confrontation requirement. *See* 108 F.Supp.2d at 343–44. The district court noted that it had issued a limiting instruction at trial, allowing the jury to consider the statements from both allocutions only on the issues of the existence of the conspiracy and "what, if anything, Marlon and Frederick Tropeano did in order to further the object of the conspiracy." *Id.* at 344. A further instruction had informed the jury that, if it found that the conspiracy as charged in the indictment existed, it "must decide as a separate question whether David Barroso was a part of the alleged conspiracy or scheme." *Id.*

The district court also noted that Barroso had refused to stipulate to the existence of the conspiracy, thereby putting the government to its proof on that issue, and that the government would not have sought the introduction of Marlon's follow-up answer had Barroso not sought the introduction of Frederick's. *See id.* at 345 & n. 8. With respect to Marlon's follow-up answer in

particular, the district court concluded that Marlon's statement that he conspired with "more than one person" was both sufficiently neutral not to incriminate Barroso and sufficiently self-inculpatory to satisfy the requirements of both Rule 804(b)(3) and the Sixth Amendment. *See id.* at 346–48.

This appeal followed. Barroso again asserts error in the admission of Marlon's follow-up answer. He also argues that the district court erroneously charged the jury that it could use a conscious avoidance theory to find that he had knowledge of the objects of the conspiracy. In that charge, the district court instructed the jury that a conscious avoidance theory could be used to find that Barroso had knowledge of the objects of the conspiracy but not to find that Barroso knowingly and willfully joined the conspiracy. Barroso now contends that the conscious avoidance instruction should not have been given because the substantive crimes in this case—securities and wire fraud-are specific—intent offenses.

Finally, Barroso claims that the district court erred in admitting the tapes of conversations allegedly between him and transferee brokers. He argues that the government failed as a matter of law to establish the authenticity of the tapes. We address these issues in turn.

## DISCUSSION

■ We review a district court's evidentiary rulings for abuse of discretion and its application of constitutional standards *de novo. See United States v. Moskowitz,* 215 F.3d 265, 268 (2d Cir.) (per curiam), *cert. denied,* —— U.S. ——, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000). We also review a claim of error in jury instruc-

---

1. Once the district court agreed to admit Frederick's follow-up statement that he had conspired with "Marlon Tropeano," defense counsel informed the court that it was no longer seeking redaction of the Tropeanos' statements that they had conspired "with others."

tions *de novo*, reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error. *See Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir.1994).

### a) Admissibility of the Allocution Statement

We address first the admissibility of the answer to the follow-up question prompted by the government in Marlon's plea allocution. As noted, in that answer Marlon stated that he conspired with "more than one person." The district court admitted the answer as a statement against penal interest, *see* Fed.R.Evid. 804(b)(3), finding that it possessed a sufficient guarantee of trustworthiness to warrant exemption from the confrontation requirement, *see* U.S. Const. amend. VI.[2]

Under Fed.R.Evid. 804(b)(3), a statement by a declarant who is unavailable as a witness is excepted from the rule against hearsay if it is

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

The rationale for this exception is "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431,

129 L.Ed.2d 476 (1994). In *Williamson*, the Supreme Court held that statements collateral to a declarant's statement against interest, but not themselves against the declarant's interest, do not possess the same indicia of reliability. *See id.* at 600–01, 114 S.Ct. 2431. The Court emphasized that the determination of whether a particular statement is against interest must be made on a case-by-case basis. *See id.* at 601, 114 S.Ct. 2431. For example, while "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest," *id.*, "[e]ven the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor," *id.* at 603, 114 S.Ct. 2431; *see also United States v. Sasso*, 59 F.3d 341, 349 (2d Cir. 1995) (holding *Williamson* requires determination that each particular hearsay statement is self-inculpatory and does not permit admission of entire narrative on ground that a portion is self-inculpatory).

The admission of the descriptive portion of Marlon's plea allocution—the "I entered ..." paragraph—as a statement against interest is not challenged by appellant. At issue is Marlon's response after the government requested that "the Court inquire whether [Marlon] conspired with one person or more than one person," namely, that he conspired with "more than one person." We believe that, given the circumstances surrounding it, that statement is not sufficiently self-inculpatory to be admissible under Rule 804(b)(3).[3] Al-

---

**2.** The Sixth Amendment reads in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

**3.** The government, and to some degree the district court, relied upon appellant's success-

ful proffer of Frederick's statement that he conspired with Marlon to justify admission of Marlon's answer to the "one [person] or more than one?" question. Although the relevance of Marlon's answer is clear in light of Frederick's limited description of the conspiracy, the answer was nevertheless hearsay. Although it would have been permissible to offer a

though the answer did not attempt to "shift blame," the question was posed at the explicit request of the government, apparently after consultation with Marlon's counsel,[4] and the answer may well have been an attempt to "curry favor."

Marlon's initial statement that he conspired "with others" fully sufficed to establish the existence of the conspiracy and his guilty involvement in it. Indeed, even if he had admitted to conspiring only "with another" instead of "with others," nothing more would have been required for his plea to be valid. The answer to the follow-up question, "whether the defendant conspired with one person or more than one person," added nothing to Marlon's admission of his own guilt but was useful to the government in the trial of Barroso. Marlon, who had not yet been sentenced, had every incentive at that point to provide the government with the information it wanted. Because he had everything to gain

and nothing to lose by the answer,[5] it lacked the necessary guarantees of trustworthiness and we conclude that the district court abused its discretion in admitting it under Rule 804(b)(3).

■ However, harmless error analysis applies to evidentiary errors and to violations of the Confrontation Clause.[6] *See United States v. Dhinsa,* 243 F.3d 635, 649, 656 (2d Cir.2001); *Moskowitz,* 215 F.3d at 270. We conclude that the error here was harmless.

■ The government introduced five taped telephone conversations[7] in which Barroso, among other things, urged employees of a transferee brokerage to execute and settle sales from a transferred account quickly. He also lied regarding his authority to transfer the customer accounts, and his tales were not always ones that would have been told by an innocent dupe. In particular, he is recorded as

subsequent hearsay statement by Frederick to clarify his allocution, *see* Fed.R.Evid. 806, Frederick's limited description was not grounds under the evidence rules for admitting a clarifying hearsay statement by Marlon.

4. The record indicates only that the prosecutor conferred with "counsel," and does not therefore unequivocally establish that the prosecutor conferred with Marlon's counsel. However, the matter in no way bears on our disposition of this appeal.

5. No claim is made by the government that Marlon's answer might have enhanced his sentence by admitting to a conspiracy of five or more members. *See* U.S.S.G. § 3B1.1 (providing sentencing enhancement for aggravating role in offense that involved five or more participants).

6. In light of the harmless nature of the admission of the follow-up statement, we need not decide whether that admission violated the Confrontation Clause as well as Rule 804(b)(3). However, for the purposes of the harmless error analysis that follows, we will assume that the admission of Marlon's state-

ment did violate the Confrontation Clause and apply the more rigorous harmlessness test for constitutional errors. *Compare United States v. Casamento,* 887 F.2d 1141, 1179 (2d Cir. 1989) ("An error of constitutional dimension may be held to have been harmless if the government can show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (internal quotation omitted)), *with United States v. Jean–Baptiste,* 166 F.3d 102, 108 (2d Cir. 1999) ("The erroneous admission of evidence is not harmless unless the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury.").

7. Although the government's papers state that it offered five tape-recorded conversations between Barroso and the transferee brokers, the district court referred to six such conversations, *see Barroso,* 108 F.Supp.2d at 339. Barroso, moreover, refers to seven, although two of those conversations appear to be between one of the brokers and someone the broker believed at the time to be an account owner. However, the precise number of tapes is immaterial to our disposition of the case.

bolstering his claim of power over an account by claiming to know the owner and to be a friend of the owner's son. The account owner testified that he had no son and had never met Barroso, much less authorized him to transfer his account. Barroso's boasting of a personal relationship with an account owner and his non-existent son in order to support a claim of authority over an account unequivocally undermined any plausible defense that he was duped into facilitating what he believed to be an innocent scheme. There was, moreover, additional incriminating testimony and documentary evidence, including Barroso's endorsement of a check from a fraudulently transferred account. *See Barroso,* 108 F.Supp.2d at 340.

We also note that the district court issued a limiting instruction that allowed the jury to consider the allocution statements only as evidence of the conspiracy alleged in the indictment, and not as evidence of Barroso's membership in it. Further, both of the Tropeanos' main allocution statements—the admission of which Barroso does not challenge—state that they conspired "with others." Therefore, any inference of Barroso's guilt inherent in Marlon's statement that he conspired with "more than one person" also inhered in his earlier, unchallenged statement that he conspired "with others." The admission of Marlon's follow-up answer was therefore harmless beyond a reasonable doubt. *See United States v. Williams,* 927 F.2d 95, 99 (2d Cir.1991).

b) *Conscious Avoidance*

■■■ Barroso's remaining claims require only brief discussion. His argument that a conscious avoidance charge is *per se* error in a conspiracy case in which the underlying substantive offense requires proof of specific intent is based entirely on a misreading of our recent decision in *United States v. Samaria,* 239 F.3d 228 (2d Cir.2001). *Samaria* 's discussion of

the conscious avoidance doctrine related only to a sufficiency issue and did not overrule our well-established caselaw that a conscious avoidance theory may support a finding that a defendant knew of the objects of the conspiracy, whether or not the underlying substantive offenses require proof of specific intent. *See United States v. Juncal,* 245 F.3d 166, 171 n. 1 (2d Cir.2001) (interpreting *Samaria* and reiterating rule on allowed use of conscious avoidance). Equally well-established, of course, is that a conscious avoidance theory may not be used to support a finding that the defendant intended to join or participate in the conspiracy. *See United States v. Ferrarini,* 219 F.3d 145, 155 (2d Cir.2000) ("[T]he jury was properly instructed that conscious avoidance could only be used to infer knowledge of the conspiracy's unlawful objectives, and not of intent to participate in the conspiracy."), *cert. denied,* —— U.S. ——, 121 S.Ct. 1997, 149 L.Ed.2d 1001 (2001); *United States v. Eltayib,* 88 F.3d 157, 170 (2d Cir.1996); *United States v. Scotti,* 47 F.3d 1237, 1243 (2d Cir.1995); *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181, 1196 (2d Cir.1989); *United States v. Lanza,* 790 F.2d 1015, 1022–23 (2d Cir.1986). In Barroso's case, the district court correctly emphasized to the jury that it could rely on conscious avoidance to support only a finding that Barroso had knowledge of the objects of the conspiracy and not a finding that he knowingly participated in the scheme. The charge was therefore proper.

c) *Admissibility of the Audiotapes*

Barroso also challenges the admission of the audiotapes on the ground that the government failed as a matter of law to establish the tapes' authenticity. As noted, the audiotapes recorded telephone conversations between Barroso and other brokers. The district court admitted the

tapes, over defense objection, after the brokers testified that they had listened to the tapes before trial and that they were fair and accurate recordings of their conversations.

■ Under Fed.R.Evid. 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R.Evid. 901(a). A trial court has broad discretion to determine whether a piece of evidence has been properly authenticated and its ruling will not be reversed absent an abuse of discretion. *See United States v. Pluta,* 176 F.3d 43, 49 (2d Cir.1999). Rule 901 also provides a non-exclusive list of "examples of authentication or identification conforming with the requirements of this rule." Fed.R.Evid. 901(b). Included among those examples are "[t]estimony of witness with knowledge," *id.* 901(b)(1), and "[i]dentification of a voice ... by opinion based upon hearing the voice at any time," *id.* 901(b)(5). In Barroso's case, the brokers who authenticated the tapes had firsthand knowledge of the conversations and each identified the voices on the tapes.

■ Barroso, however, argues that the government also needed to establish a chain of custody for the tapes, relying upon *United States v. Fuentes,* 563 F.2d 527 (2d Cir.1977). In *Fuentes,* we upheld the admission of tapes as sufficiently authenticated by evidence of an unbroken chain of custody. *See id.* at 532. However, our upholding the authentication of tapes by establishing a chain of custody in the absence of testimony by a contemporaneous witness to the recorded conversations does not imply, as appellant suggests, that such a witness cannot provide equally sufficient authentication without proof of a chain of custody. Indeed, appellant's position is contrary to the plain language of Rule 901. *See United States v. Barone,*

913 F.2d 46, 49 (2d Cir.1990) ("[T]he government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it."); *United States v. Rizzo,* 492 F.2d 443, 448 (2d Cir.1974) (holding that voice identification by three detectives was sufficient); *United States v. Albert,* 595 F.2d 283, 290 (5th Cir.1979) (voice identification by conversation participant proper); *see also Pluta,* 176 F.3d at 49 ("The burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." (quoting *United States v. Holmquist,* 36 F.3d 154, 168 (1st Cir. 1994)). Finally, *Fuentes* also noted that "this Circuit has never expressly adopted a rigid standard for determining the admissibility of tape recordings." 563 F.2d at 532. The district court therefore did not abuse its discretion in admitting the tapes.

■ Authentication of course merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury. Barroso was free to challenge the tapes' reliability by, for example, cross-examination of the brokers concerning their familiarity with Barroso's voice and the tape recording system. Any doubts raised by such a challenge would, however, go to the weight to be given to the tapes by the jury, not to their admissibility. *See United States v. Sovie,* 122 F.3d 122, 127–28 (2d Cir.1997); *Albert,* 595 F.2d at 290.

We therefore affirm.