**UNITED STATES of America,**
**Appellee,**

v.

**Alvin E. BAKAL, aka "Tom Richardson", aka "Phil Evans", Olawande A. Agunloye, aka "Wanda", Norman Lescht, aka "Norman Martin", Robert**

Schwickrath, Joseph Pizzarelli, aka "Piz", Brian Walfish, aka "Jerry", Vincent Selvester, Anthony Selvester, Bradford Andrew Brock, aka "Alan Brock", Abraham Wei Tu, Kenneth E. Lee, Ron Ramsey, Wendell Marshall, and Jeremy Crittenden, Defendants,

**Frank Verga and Louis Thomas Buonocore, Defendants– Appellants.**

Nos. 00–1420(L), 00–1432.

United States Court of Appeals, Second Circuit.

Oct. 3, 2001.

Lawrence D. Gerzog, New York, NY, for appellant Verga.

Dayna Ferebee, New York, NY, for appellant Buonocore.

Patrick J. Smith, Assistant United State Attorney for the Southern District of New York; Mary Jo White, United States Attorney and Marc Weinstein and Meir Feder, Assistant United States Attorneys on the brief, New York, NY, for appellee.

Present FEINBERG, CARDAMONE, POOLER, Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and it hereby is AFFIRMED.

Defendants Frank Verga and Louis Thomas Buonocore appeal from the judgments of conviction entered on June 1, 2000, following a three week jury trial. The indictment charged eighteen defendants and contained twenty-nine counts alleging securities fraud, wire and radio fraud, and commercial bribery, as well as conspiracy to commit those substantive acts. Only defendants Verga and Buonocore proceeded to trial. Verga was convicted of four counts of conspiracy to commit securities and wire fraud in violation of 18 U.S.C. § 371, one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and four counts of securities fraud in violation of 15 U .S.C. §§ 78j(b) and 78ff. On May 31, 2000, Judge Griesa sentenced Verga to twenty-seven months imprisonment, three years supervised release, $634,205 in restitution, and $900 in special assessments. Buonocore was convicted of one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and three counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff. Judge Griesa sentenced Buonocore to eighteen months imprisonment, three years supervised release, $147,750 in restitution, and $400 in special assessments.

At trial, the Government offered evidence intended to prove that the defendants were involved in several schemes to defraud investors of certain stocks by the use of false and manipulated information concerning the value of the stocks and undisclosed and fraudulent information about the compensation they would receive for brokering the deal. In addition, the Government alleged that Verga did not reveal his identity to his customers in order to conceal the fact that he was not a registered broker. Buonocore was alleged to have leased office space to the conspirators and to have participated in the scheme. Because defendant Avin Bakal, the organizer of the conspiracy and the main figure in all of the schemes, pleaded guilty prior to trial, the main issue at trial was determining the extent of participation, if any, of Verga and Buonocore in the schemes. Both Verga and Buonocore appeal their convictions on a number of grounds, and Verga appeals his sentence of restitution. Each defendant adopts the arguments of the other. Because we find no merit in any of these arguments, we affirm the judgments and sentences below.

Defendants first argue that the district court erred in admitting numerous audiotapes of conversations among the defendants because Special Agent Charles Russell, the Government witness through whom the tapes were introduced, did not have personal knowledge of the proper operation of the equipment, and therefore could not properly authenticate the tapes. On appeal, a district court's evidentiary rulings are reviewed for abuse of discretion. *See United States v.. Tropeano,* 252 F.3d 653, 657 (2d Cir.2001). The general standard governing admission of audiotapes is "that the government 'produce clear and convincing evidence of authenticity and accuracy' as a foundation for the admission of such recordings." *United States v. Fuentes,* 563 F.2d 527, 532 (2d Cir.1977) (quoting *United States v. Knohl,* 379 F.2d 427, 440 (2d Cir.1967)). Furthermore, voice identification is sufficient to authenticate the tapes under Fed.R.Evid. 901(a), *see id.* 901(b)(5), and the Government need not establish the chain of custody with a contemporaneous witness to the recordings. *See Tropeano,* 252 F.3d at 660–61; *Fuentes,* 563 F.2d at 532.

The defendants have not shown that the district court abused its discretion in admitting the tapes as authentic. Russell was not actually physically present in the room with the recording equipment for every phone call recorded, did not personally operate the recording equipment, and could not testify to the number of phone calls recorded. However, he supervised the project, monitored its status, personally reviewed every tape, and verified the dates and times of each call. In addition, one of the coconspirators identified the voices of both Verga and Buonocore on certain tapes. The court acted within its discretion in admitting the tapes after concluding that the tapes were what they appeared to be.

Defendants also argue that the court abused its discretion in allowing the jury to see transcripts of the recordings because they were erroneous and cumulative. The Government introduced approximately seventy-five tape recordings at trial. Although it may not have been essential to the presentation of the evidence for the jury to follow along with the transcripts, defendants have failed to show it was an abuse of discretion to allow the jurors to do so, particularly since the defendants do not point to any errors in the transcripts. Furthermore, the court did administer an instruction informing the jury that the recordings were to govern in the event of a discrepancy between the tapes and the transcripts and cautioned jurors that the transcripts were simply an aid. *See United States v. Ben–Shimon,* 249 F.3d 98, 101–02 (2d Cir.2001) (noting that a limiting instruction helps to alleviate any prejudice resulting from the use of transcripts).

Defendants next argue that the district court's instructions on securities fraud improperly amended the indictment because the instructions, but not the indictment, included some of the language of § 10(b)–10 of the Securities and Exchange Act of 1934 and, therefore, that defendants lacked notice of this charge and could not prepare a defense. The defendants also argue that the instructions addressing duties to disclose information "indicated that statements or omissions about compensation were by their nature material" and thus took the issue of materiality away from the jury. Defendants objected at trial, and so the issue is properly preserved for our consideration. "We … review a claim of error in jury instructions *de novo,* reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error." *Tropeano,* 252 F.3d at 657–58.

As the court noted during the charging conference, the indictment does not specifically charge a violation of Rule 10(b)–10. However, the indictment does contain language similar to the language used in 10(b)–10. For example, the first count of the indictment alleges that the defendants, including Verga, "violate[d] a broker's duty to disclose to his customer all material facts concerning securities transactions in the customer's account." Given this language, it is unreasonable for Verga to argue that he was not on notice that the Government would argue that he was violating a duty to disclose certain information in connection with the sales of stocks. Using the language of § 10(b)–10 to explain the charged offenses did not create a new crime for Verga to defend against. Verga has not shown that the substance of the indictment differs substantively from the charge given or that he was prejudiced by the inclusion of language similar to the language that appears in § 10(b)–10. Furthermore, we find that the instruction did not withdraw the element of materiality from the jury's consideration.

■ Both defendants next argue that the district court erred in giving a conscious avoidance charge. Buonocore argues that a conscious avoidance charge is inappropriate for the offenses of conspiracy and substantive securities fraud on an aiding and abetting theory. Verga argues that the conscious avoidance charge was inappropriate because the Government did not present evidence to support that theory. Finally, both defendants argue that even if a conscious avoidance charge was warranted, the charge as given was erroneous because it improperly equated conscious avoidance with intent, instead of

knowledge. Both defendants objected at trial,[1] and so we review *de novo*. *See Tropeano*, 252 F.3d at 657–58.

■ "A conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact." *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir.2000), *cert. denied*, — U.S. ———, 121 S.Ct. 1997–98, 149 L.Ed.2d 1001 (2001); *see also United States v. Finkelstein*, 229 F.3d 90, 95 (2d Cir.2000). The court may not give a conscious avoidance charge if the evidence does not support it; that is, if there is evidence of actual knowledge. *See Ferrarini*, 219 F.3d at 157. However, if the evidence of actual knowledge was overwhelming, then an unwarranted conscious avoidance charge is a harmless error. *Id.*

■ Buonocore's argument that a conscious avoidance charge is inappropriate for specific intent crimes such as conspiracy to commit and aiding and abetting in the commission of securities fraud is incorrect. While *United States v. Samaria*, 239 F.3d 228, 239–40 (2d Cir.2001), held that conscious avoidance cannot establish specific intent, it can still show knowledge of the "unlawful objectives of the conspiracy." *United States v. Juncal*, 245 F.3d 166, 171 n. 1 (2d Cir.2001); *Tropeano*, 252 F.3d at 660. Thus, the fact that Buonocore was charged with crimes requiring proof of specific intent does not negate the applicability of a conscious avoidance charge. However, Verga is correct that the Government did not present evidence of a conscious avoidance theory of knowledge, and, under the circum-

---

1. The Government argues that the defendants did not object to the specific language of the conscious avoidance charge and, therefore, only plain error review is warranted. How-

ever, because attorneys for both defendants made objections to the inclusion of the charge at all, the issue is preserved for appeal.

stances, a conscious avoidance charge was not necessary. Although unnecessary, neither defendant has shown prejudice from the instruction, and so the inclusion of the instruction was harmless error.

Both defendants also challenge a sentence contained in the conscious avoidance charge that states, "If somebody is guilty of that, that is guilty intent, or can be, can be a guilty and fraudulent intent which creates criminal liability." Defendants argue that this instruction equated conscious avoidance with intent, not knowledge, and thus allowed the jury to convict the defendants without finding that element beyond a reasonable doubt. Although this statement does seem problematic, the charge, read as a whole, makes clear that conscious avoidance is a theory of knowledge, not intent, and that the jury had to find both intent and knowledge to convict the defendants. Therefore, we conclude that the conscious avoidance charge, viewed in its entirety, was not clearly erroneous.

Verga next argues that the court erred in calculating his amount of restitution in that it reflects the amount of the investments, not the amount of the actual loss suffered by the victims. Verga did not object to the findings contained in the PSR, which the court adopted and used to calculate restitution, nor did he object to the court's imposition of restitution at sentencing. Therefore, he must establish plain error in order to succeed on appeal. *See United States v. Boyd*, 222 F.3d 47, 49 (2d Cir.2000).

While Verga is correct that the amount of restitution should reflect the amount of the actual loss sustained, not the total amount of the investment, *see* U.S. Sentencing Guidelines Manual §§ 5D1.3(a)(6) and 5E1.1(a) (2000), he has not shown that the court did not order restitution based on the amount of the loss. The judgment reflects a total amount of loss attributable to Verga of $627,236.50 and an amount of restitution ordered of $634,205. Although this does show a restitution greater than the loss, the court could have ordered Verga to pay restitution not just for the amount of loss caused by his own actions, but also "for all losses caused by the actions ... of that defendant's co-conspirators." *Boyd*, 222 F.3d at 50. Because the amount of restitution could have included the losses resulting from criminal acts of the other defendants and, thus, been higher than the one ordered, Verga has not established that he was prejudiced by any error made in determining the amount of restitution. Verga also identifies one example in which a portion of the trial testimony of one witness contradicts the amount of loss attributed to that witness in the PSR and then argues, "[s]ince other, similar errors may well have occurred, this Court should remand to the District Court for recalculation of the restitution amount using the correct legal standard." This is insufficient to establish that either the PSR or the court's findings were erroneous. *See United States v. Caba*, 955 F.2d 182, 187 (2d Cir.1992) ("[A]ppellants may not seek a remand from this court on a factual issue that could have been presented to the sentencing judge for consideration.").

Buonocore next argues that the Government presented insufficient evidence of the necessary intent for each of the charges to establish his guilt beyond a reasonable doubt and that the Government did not show he was a member of the conspiracy, a participant in the substantive crimes, or that he aided and abetted in the commission of the substantive crimes. "A convicted defendant bears a very heavy burden in challenging the sufficiency of the evidence," and the appellate court must

"view the evidence in the light most favorable to the government." *United States v. Marji,* 158 F.3d 60, 63 (2d Cir.1998) (internal quotations omitted). "When challenged on sufficiency grounds, a conviction will be affirmed if, viewing all the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Samaria,* 239 F.3d at 233 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (omitting emphasis)).

Although Buonocore poses some alternative interpretations of the evidence, he has not shown that a rational jury could not have interpreted the evidence to find all of the elements of the offenses charged beyond a reasonable doubt. For example, Buonocore's argument that he acted only as a renter of property who may have been aware of criminal activity but did not participate in it is only one interpretation of the evidence. The other, of course, is the one that the Government supported at trial—that Buonocore's leasing of the property was one act establishing his participation in the conspiracy. The recordings of phone conversations and Walfish's testimony as to Buonocore's presence in the office when the illegal sales occurred are consistent with a showing of knowledge, and the evidence that he leased office space in exchange for affiliation with a registered broker who he knew was engaged in a fraudulent scheme supports his participation in the scheme. Viewing all of the evidence in the light most favorable to the Government, we reject Buonocore's claim that the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt.

■ Finally, Buonocore appeals the district court's admission, over his objection, of the testimony of Government witness Linda A. Walters of the NASD that Buonocore's licence was suspended "from July 21 of 1997 until July 28 of 1998[and] that he was suspended from associating with any member firm in any capacity for that one year time period as a result of the complaint that was brought against him by the NASD." Buonocore objected to this evidence as prejudicial and improper under Fed.R.Evid. 404(b) and irrelevant because he was not charged with selling securities. We find that the court did not abuse its discretion in admitting this testimony. *See United States v. Pitre,* 960 F.2d 1112, 1118–19 (2d Cir.1992). The Government proffered that the suspension provided a motive for Buonocore to become involved in the scheme because he needed an affiliation with a registered broker in order to do business. Rule 404(b) makes clear that motive is a proper purpose to admit a past act. Furthermore, Walter's testimony was limited to the fact of, not the reasons for, the suspension. Buonocore did not ask for a limiting instruction, as it was his right to do, nor did he suggest the alternative he now proposes of admitting only the fact that Buonocore had no licence, as opposed to a suspended licence. The district court did not abuse its discretion in allowing in the testimony, and this Court will not reverse that ruling.