UNITED STATES of America,
Plaintiff,

v.

Anthony CAPANELLI, Defendant.

No. 01 CR 1121(CSH).

United States District Court,
S.D. New York.

April 1, 2003.

James B. Comey, United States Attorney for the Southern District of New York, New York City (Matthew L. Biben, Edward C. O'Callaghan, of Counsel), for Plaintiff.

Edward W. Hayes, P.C., New York City (Edward W. Hayes, Rae Koshetz, of Counsel), for Defendant.

## MEMORANDUM AND ORDER

HAIGHT, Senior District Judge.

The Court has considered the most recent correspondence of counsel [1] with re-

---

1. Government's letter dated March 17, 2003; defense counsel's letter dated March 19, 2003; government's letter dated March 21, 2003; defense counsel's letter dated March

spect to the voice recordings the government intends to offer during its case in chief. Those letters were written in response to the Court's direction, intended to clarify evidentiary issues relating to the recordings that had emerged during pre-trial conferences in the case. This memorandum addresses those issues.

A number of Federal Rules of Evidence are implicated. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b) sets forth, "[b]y way of illustration only, and not by way of limitation," examples "of authentication or identification conforming with the requirements of this rule." In the case at bar the government, as the proponent of the voice recordings, must offer evidence "sufficient to support a finding" that the recordings are of the voices of the individuals the government says participated in the recorded conversations, at the times and places the government alleges. To that end, the government may rely upon the testimony of a witness with knowledge, Rule 901(b)(1), or upon Rule 901(b)(5), which provides: "Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."

In this case, the voice recordings were made using a digital recording device which enables law enforcement agents to record several hours of conversations on memory chips, thereby vastly expanding the recording capability over the "body wires" of yesteryear. The chips can hold and store the recordings. The contents can subsequently, by use of computer soft-ware designed for the purpose, be transformed into CDs or audio tapes.

According to defense counsel, "[i]t is uncontested that the originals of all the recordings were destroyed," letter dated March 26, 2003 at 2, and the government does not contend otherwise. That circumstances leads to consideration of Rules 1001, 1002, and 1003.

Rule 1001(3) provides

**Original.** An "original" of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An "original" of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original".

Rule 1001(4) provides:

**Duplicate.** A "duplicate" is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.

Rule 1002 provides:

**Requirement of Original.** To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

Rule 1003 provides:

**Admissibility of Duplicates.** A duplicate is admissible to the same extent as an original unless (1) a genuine question

22, 2003; defense counsel's letter dated March 26, 2003.

is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

The government intends to offer at trial CD or tape reproductions of the destroyed digital chip original recordings. Such reproductions would appear to qualify as "duplicates" under Rule 1001(4). While Rule 1002 states in general terms that to prove its "content" the "original ... recording ... is required," Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

The case at bar involves the applicability of these rules of evidence to voice recordings. The most recent Second Circuit cases concerning recorded conversations distinguish between the recordings' *authentication*, required for admissibility, and their *reliability*, to be assessed by the jury. That distinction is illustrated by *United States v. Tropeano*, 252 F.3d 653 (2d Cir.2001). The defendant's participation in a fraud conspiracy was evidenced in part by audiotapes of his conversations with other brokers. Defendant challenged on appeal "the admission of the audiotapes on the ground the government failed as a matter of law to establish the tapes' authenticity." *Id.* at 660. The court of appeals held that the tapes were admissible under Rules 901(b)(1) and 901(b)(5), since "the brokers who authenticated the tapes had firsthand knowledge of the conversations and and each identified the voices on the tapes." *Id.* at 661. *Tropeano* also holds that where voice identification by a witness is sufficient under Rule 901(b)(5), the government need not also establish a chain of custody for the tapes. *Id.* With respect to the distinction between authentication and reliability, the *Tropeano* court concluded:

Authentication of course merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury. Barroso was free to challenge the tapes' reliability by, for example, cross-examination of the brokers concerning their familiarity with Barroso's voice and the tape recording system. Any doubts raised by such a challenge would, however, go to the weight to be given to the tapes by the jury, not to their admissibility.

*Id.* (citations omitted).

In *United States v. Sovie*, 122 F.3d 122 (2d Cir.1997), which the *Tropeano* court cited, the defendant objected to taped recordings of his voice on the grounds that the other individual in the recording "had turned off the recorder in the middle of conversations," and "erased portions of the tape in which she was provoking Sovie." *Id.* at 127. At the trial "a defense expert was allowed to testify to the possible significance of various clicks heard on the tapes." *Id.* The Second Circuit affirmed the trial judge's ruling that "the allegations of tampering went to the weight of the evidence rather than to its admissibility," and went on to say:

In any event, the defense in the instant case was allowed to develop testimony related to the alleged tampering and to argue to the jury that the tapes may have been incomplete. The jury, after hearing testimony and arguments relative to the reliability and accuracy of the tapes and under proper instructions from the court, reached its own conclusion on that issue. Because the issue is one of weight rather than admissibility, the court properly left it to the jury.

*Id.* at 127–28 (citations, footnotes, and internal quotation marks omitted).

In the case at bar, the government's intended proof as described in its March 17, 2003 letter at 2–5 would appear, if elicited at trial, to satisfy the authentication requirements of Rule 901. Most of defense counsel's submissions in the recent correspondence go to the reliability of the recordings, with a particular emphasis upon complications that might arise from modern recording and reproducing technology. This is an area that defense counsel may probe through cross-examination of the government's witnesses and the opinion testimony of a defense expert witness, with the reliability of the recordings being left, as Second Circuit authority requires, to the jury.

I will deal with certain specific requests of the defendant. I am asked to preclude the government "from offering any recordings at trial because the originals were destroyed and because it will not turn over the software that is used in the process to make the recordings and copies." Defense counsel's letter dated March 26, 2003 at 4. I decline to do so. Notwithstanding the conceded destruction of the digital chip originals, the recordings produced from them are duplicates and admissible under the protocol established by Rules 1001–1003. Any potential problems inherent in the software-assisted reproduction of the recordings may be fully explored by a defense expert witness, with the jury then asked to reject the recordings as technically unreliable.

Defendant complains of the government's refusal to turn over the surveillance records which underlie all 60 recordings that the government may offer. However, defense counsel originally requested surveillance tapes with respect to only seven tapes which seemed to "abruptly end without deactivation from one of the undercover officers," letter dated March 6, 2003 at 1; and the government has furnished defense counsel with the surveillance logs for the three recorded meetings which appear to present the problem and the government intends to offer. That is sufficient disclosure.[2]

Lastly, defendant asks that to the extent the government is allowed to produce recordings at trial, "the defense be allowed to call a defense expert." Defense counsel's letter dated March 26, 2003 at 5. Of course the defendant is allowed to call an expert witness. Leave of court is not required. The right of defendants to challenge the reliability of voice recordings through the testimony of an expert witness is expressly recognized by cases such as *Sovie, supra.*

The foregoing is SO ORDERED.

---

**2.** As the government recognizes, letter dated March 21, 2003 at 2, additional surveillance logs may be required to be turned over under 18 U.S.C. § 3500, depending upon which witnesses the government decides to call.