18-2897
*United States v. Potapova*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of January, two thousand twenty.

Present:
> REENA RAGGI,
> DEBRA ANN LIVINGSTON,
> WILLIAM J. NARDINI,
>   *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                              18-2897

YANA POTAPOVA, a/k/a Yana Thompson,

> *Defendant-Appellant*.

_____

For Defendant-Appellant:          JAMES P. EGAN, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, New York.

For Appellee:                     RAJIT S. DOSANJH, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, New York.

1

Appeal from a judgment of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on September 26, 2018, is **AFFIRMED**.

Defendant Yana Potapova appeals her conviction for marriage fraud in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1325(c), arguing that certain trial rulings violated the Federal Rules of Evidence and her constitutional rights to present a defense and to confront the government's primary witness against her, Brett Thompson, Potapova's husband and alleged co-conspirator. "We review a district court's evidentiary rulings for abuse of discretion and its application of constitutional standards *de novo*." *United States v. Tropeano*, 252 F.3d 653, 657 (2d Cir. 2001). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Potapova challenges the district court's refusal to allow defense counsel, on cross-examination of Thompson, to introduce extrinsic evidence (namely, three U.S. Treasury checks deposited by Thompson in 2011, as well as associated bank records) for the purpose of showing that Thompson was an unindicted co-conspirator in an unrelated U.S. Treasury fraud conspiracy to which his former employer, Carbonara (also a witness at trial) had pleaded guilty. Potapova argues that this evidence was relevant to demonstrate Thompson's motive to lie in his trial testimony because the jury could find that Thompson falsely implicated himself and Potopava in a marriage fraud conspiracy in order to divert law enforcement from investigating his involvement in the Treasury fraud, a more serious offense.

The district court ruled that this extrinsic evidence was inadmissible for three independently sufficient reasons: first, it was barred by Federal Rule of Evidence 608(b); second,

even if not barred by Rule 608(b), it was irrelevant and thus barred by Rule 401; and, third, even if the evidence was relevant and admissible under Rules 608(b) and 401, the court reasonably exercised its Rule 403 discretion to exclude it as more confusing than probative. Though the extrinsic evidence was thus excluded, defense counsel was permitted to question Thompson regarding the check deposits, his awareness of Carbonara's guilty plea, his past employment with Carbonara, how he deposited his salary, and other bank transactions. During Carbonara's testimony, the court prevented defense counsel from questioning Carbonara about Thompson's involvement in the Treasury fraud scheme, again on Rule 403 grounds. Likewise, during closing arguments, the court prohibited defense counsel from arguing that Thompson was part of Carbonara's fraud or referring back to questions posed to Thompson regarding the Treasury checks. But defense counsel was permitted to argue that Thompson had a significant relationship with Carbonara and that he had lied about that relationship and his finances.

\* \* \*

We need not address the district court's determination that the extrinsic evidence here was barred by Rules 608(b) and 401 because, even assuming those determinations were erroneous, the district court acted within its discretion in excluding the evidence under Rule 403. Pursuant to that rule, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. And "[u]nder Rule 403, so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Here, the district court's analysis was plainly not arbitrary or irrational. As an initial matter, the proffered evidence bore minimal probative value due to Potapova's implausible theory of motive. Certainly, the excluded evidence is not directly probative of any motivation to lie. As the district court pointed out, Thompson could have just as easily confessed *truthfully* to his participation in a marriage fraud in an effort to avoid detection of his role in the Treasury fraud; accordingly, any inference of a motivation to lie depends entirely on conjecture. Moreover, even assuming Thompson's involvement in the Treasury fraud and fear of prosecution for that crime, the idea that he would falsely implicate himself and Potapova in a different crime in order to avoid detection of the more serious crime is worse than far-fetched, given (1) that Potapova would inevitably contest his account and prompt further investigation, and (2) Thompson had admitted the marriage fraud to a girlfriend months before being approached by law enforcement authorities. Thus, the tendency of the excluded evidence to show that Thompson had a motive falsely to implicate Potapova in marriage fraud was so minimal as to be almost non-existent.[1]

Against such minimal probative value, the district court weighed the substantial risks of jury confusion inherent in introducing evidence of an entirely separate crime allegedly committed years prior to the events at issue in the trial. Notwithstanding defense counsel's assurances that its theory could have been established efficiently, the district court's concerns regarding a "trial within a trial" were well-founded given that the jury would have to understand the factual background regarding the Treasury fraud scheme, determine whether Thompson was in fact

---

[1] Moreover, Potapova's attempts to bolster the probative value of the contested evidence by pointing to supposed corroborating circumstances are unavailing. Contrary to Potapova's unsupported statements in her offer of proof, the trial record belies Potapova's claims that Thompson minimized his relationship with Carbonara or lied about the origins of his bank account.

4

involved, grasp the significance of Thompson's deposits within the scheme, gauge the scope of his involvement, and determine Thompson's knowledge of Carbonara's prosecution. Given the serious risk of jury confusion and the minimal probative value of the evidence, we cannot conclude that the district court acted arbitrarily or irrationally in exercising its discretion to exclude the evidence under Rule 403.[2]

Given the propriety of the district court's Rule 403 determination, Potapova's constitutional arguments are also unavailing. The rights to present a defense and to confront witnesses are not absolute. "Restrictions on presenting evidence do not offend the Constitution if they serve 'legitimate interests in the criminal trial process' and are not 'arbitrary or disproportionate to the purposes they are designed to serve.'" *United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006) (quoting *Rock v. Arkansas,* 483 U.S. 44, 55–56 (1987)). "Similarly, the right to confront and cross examine witnesses is tempered by a trial judge's 'wide latitude' to impose 'reasonable limits' in order to avoid matters that are confusing or of marginal relevance." *Id.* (quoting *Howard v. Walker,* 406 F.3d 114, 128–29 (2d Cir. 2005)). As discussed above, the district court properly applied Rule 403, an evidentiary rule that serves "legitimate interests in the criminal trial process," and the resulting restrictions on the presentation of evidence were neither arbitrary nor disproportionate to those interests. *Rock,* 483 U.S. at 55 (internal quotation marks omitted). There was no error, let alone one of constitutional dimension. *See United States v. Mi Sun Cho*, 713 F.3d 716, 721 (2d Cir. 2013). Likewise, Potapova cannot demonstrate a violation

---

[2] While the district court at one point in its written decision misstated the Rule 403 standard by inverting the rule's balancing test, A. 279, the record as a whole clearly reflects that the court understood and applied the proper standard in excluding the evidence. The court began its written analysis with a correct recitation of the standard, and properly weighed the minimal probative value of the evidence against the significant risks of admitting the evidence**.** Additionally, the court determined on the record at trial that "the prejudicial value outweighs the probative value," A. 81, and adopted that finding in its written decision. Accordingly, there is no basis to conclude that the district court misapplied the Rule 403 standard.

of her right to confront the witnesses against her. Defense counsel was permitted to ask Thompson whether he was involved in the Treasury fraud scheme and whether he was aware of Carbonara's conviction; the district court placed limitations on the cross-examination only with respect to extrinsic evidence. As discussed above, the district court's limitations on that evidence were properly rooted in a sound analysis of the "balance [of] prejudice versus probative value." *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011). Accordingly, the limitation on Potapova's cross-examination was "harmonious with the goal of ensuring the legitimacy of the truthfinding process" and, therefore, "lawful and legitimate." *Howard*, 406 F.3d at 129.

Finally, and for the foregoing reasons, Potapova has also failed to demonstrate that "letting [the] guilty verdict stand would be a manifest injustice" due to "a real concern that an innocent person may have been convicted." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted). The district court therefore did not abuse its discretion in denying her the "extraordinary" remedy of a new trial under Federal Rule of Criminal Procedure 33. *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).

We have considered Potapova's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

6